UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,                    Court File No. 16-cv-2547 (SRN/LIB)

        Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

William J. Mooney, et al.,

        Defendants.

---

This matter comes before the undersigned United States Magistrate Judge upon Plaintiff's Motion for Summary Judgment, [Docket No. 119], and upon referral from the Honorable Susan Richard Nelson. (Order of Referral [Docket No. 126]). A hearing was held on March 15, 2018, after which the motion was taken under advisement. [Docket No. 145].

For the reasons discussed herein, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 119], be **GRANTED** as set forth below.

## I.    Introduction

On July 28, 2016, Plaintiff the United States of America initiated the present action by filing its Complaint. (Compl. [Docket No. 1]). Plaintiff's Complaint seeks to "reduce federal tax and penalty assessments to judgment and enforce federal tax liens on property located in this district." (Id.).

The facts underlying the present case have been set forth by this Court many times, and those facts will not be repeated here. (See, Orders [Docket Nos. 36, 47]; Report and Recommendations [Docket Nos. 74, 112]). The facts are recounted herein only to the extent necessary for the present motion.

## II.    Standard of Review

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis added).

While the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, the nonmoving party may not rest on mere allegations or denials in their pleadings; rather, the non-moving party must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting admissible evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986); <u>United of Omaha Life Ins. Co. v. Honea</u>, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). "Naked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. <u>Dutton v. University Healthcare Sys., L.L.C.</u>, 136 Fed. App'x 596 (5th Cir. 2005) (unpublished decision); <u>see</u> <u>also</u>, <u>Simms v. McDowell</u>, No. 4:08cv–60–M, 2009 WL 3160353, at *5 (W.D.Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment."). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." <u>Frevert v. Ford Motor Co.</u>, 614 F.3d 466, 473 (8th Cir. 2010) (quoting <u>Bacon v. Hennepin Cty. Med. Ctr.</u>, 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." <u>Id.</u> at 473–74. A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. <u>Wilson v. Int'l Bus. Mach. Corp.</u>, 62 F.3d 237, 241 (8th Cir. 1995); <u>Smith v. International Paper Co.</u>, 523 F.3d 845, 848 (8th Cir. 2008).

Further, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment." <u>Scott</u>, 550 U.S. at 380. "If the moving party supports the motion with evidence, the opposing party must rebut it or the court can consider the fact undisputed." <u>Irish v. U.S. Dept. of Justice</u>, Civ. No. 11-2703 (MJD/JJK), 2013 WL 451314, at *2 (D. Minn. Jan. 3, 2013) (citing Fed. R. Civ. P. 56(e)(2)), <u>adopted by</u>, 2013 WL 452576, <u>rev'd on other grounds</u>, 564 Fed. App'x 259 (8th Cir. 2014).

The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; Davidson & Associates v. Jung, 422 F.3d 630, 638 (8th Cir. 2005). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526–27 (8th Cir. 2007). If the nonmoving party relies on conclusory allegations, and fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. Beyer v. Firstar Bank, N.A., 447 F.3d 1106, 1108 (8th Cir. 2006).

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see, Quam v. Minnehaha Cty. Jail, 821 F.2d 522, 522 (8th Cir. 1987).

## III.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. [DOCKET NO. 119].

The United States' present motion seeks an Order of this Court entering summary judgment in its favor on all raised claims. (Mot. for Summary Judgment [Docket No. 119]). Specifically, the United States seeks to have the tax liens assessed against Defendants reduced to judgment, a finding that the United States has valid and subsisting liens against Defendants' property, and an Order directing the Defendants' property be sold.

"Tax assessments made by the IRS are presumed correct, and the taxpayer bears the burden of proving, by a preponderance of the evidence, that the assessment is erroneous." N.S. State Univ. v. United States, 255 F.3d 599, 603 (8th Cir. 2001). In the present case, the United States in support of its Motion submitted assessments in the form of the sworn declarations of IRS Revenue Officers Richard Wallin and Shawn Kennedy, as well as, Certifications of Assessments and Payments which provide a transactional history of the relevant tax years. Certificates of Assessment and Payments, such as those submitted in the present case, are assessments that have long enjoyed the presumption of correctness by the Courts. See, e.g., United States v. Hanson, No. 3-cv-6562 (ADM/JSM), 2005 WL 3116099, at *2 (D. Minn. Apr. 21, 2005) (citing United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993)).

Defendants have failed to proffer any admissible evidence to rebut the assessments presented by the United States in the present case. As discussed more fully below, in response to the United States' Motion for Summary Judgment, Defendants have only offered meaningless and routinely rejected tax protestor documents. (See, [Docket Nos. 128–130, 132–134, 140, 141, 144]). Although the assertions in those documents have been repeatedly dismissed by the Court, at the March 15, 2018, motions hearing on the present motion, Defendants relied on the documents they had submitted; argued that the Court should recognize their right to "subrogation"; and without specifics, argued that no one had stated a claim against the "fictional" persons named in the present action. However, Defendants have failed to present any admissible evidence in an attempt to rebut the presumption of correctness of the IRS tax assessments in the present case.

Accordingly, the assessments proffered by the United States regarding the amount of Defendants' tax liabilities in the present case are presumed correct. See, e.g., Hanson, 2005 WL 3116099, at *2 (citing Gerads, 999 F.2d at 1256).

However, neither this presumption nor Defendants' failure to submit any admissible evidence to rebut the United States' Motion for Summary Judgment, [Docket No. 119], means that the United States' Motion is to be granted by default. Rather, the Court must still ensure that the United States has presented the evidence demonstrating it is entitled to judgment in the present case.

**A. Defendants' Income Tax Assessments**

In 2002 and 2003, Defendants filed joint tax returns. (Richard Wallin Decl., [Docket No. 123], at ¶ 4). Those returns were subsequently audited by the IRS, and the IRS found that certain payments which had been paid into a trust in 2002 and 2003 should have been reported as income which resulted in additional taxes owed. (Id.). Subsequently, a delegate of the Secretary of Treasury made assessments against Defendants for income taxes, interest, and penalties for the 2002 and 2003 tax year which as of June 9, 2016, maintained an unpaid balance of $24,065.46. (Certifications of Assessment and Payments, [Docket No. 108], at Gov't's Ex. 1, Gov't's Ex. 2). The IRS sent notices of the above assessments and demands for payments to Defendants. (See, Id. at Gov't's Ex. 1, Gov't's Ex. 2).

In 2004, William Mooney did not file a federal income tax return. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 35). After Mr. Mooney failed to file a tax return for the 2004 year, the IRS recreated his income and expenses for that tax year, and a delegate of the Secretary of Treasury made an assessment against Mr. Mooney for income taxes, interest, and penalties for the 2004 tax year. (Id.). Mr. Mooney was sent notice of the assessment, an explanation of how

the assessment was calculated, and a demand for payment. (Id.; Certification of Assessment and Payments, [Docket No. 108], at Gov't's Ex. 3). As of June 9, 2016, Mr. Mooney had a tax liability for the 2004 tax year in the amount of $30,546.41. (Certification of Assessment and Payments, [Docket No. 108], at Gov't's Ex. 3).

In 2013 and 2014, Defendants again filed joint tax returns. (Richard Wallin Decl., [Docket No. 123], at ¶ 7). A review by the IRS of Defendants' 2013 and 2014 joint tax returns found additional taxes being owed based on Defendants' self-reported income. Subsequently, a delegate of the Secretary of Treasury made assessments against Defendants for income taxes, interest, and penalties for the 2013 and 2014 tax year which as of June 9, 2016, maintained an unpaid balance of $3,138.66. (Certifications of Assessment and Payments, [Docket No. 108], at Gov't's Ex. 4, Gov't's Ex. 5). The IRS sent notices of the above assessments and demands for payments to Defendants. (See, Id. at Gov't's Ex. 4, Gov't's Ex. 5).

As noted above, these tax assessments are presumed correct. See, e.g., N.S. State Univ., 255 F.3d at 603; Hanson, 2005 WL 3116099, at *2. And Defendants have failed to proffer any admissible evidence to rebut or dispute the assessments presented by the United States in the present case. Accordingly, the United States is entitled to summary judgment such that the federal income tax liability assessments against Defendants should be reduced to judgment.

As of January 1, 2018, the assessments made against Defendant William Mooney, including federal income taxes, interest, and penalties, for the 2002, 2003, 2004, 2013, and 2014 tax years maintains a balance of $63,355.21. (Kennedy Decl., [Docket No. 122], at ¶ 5). As of January 1, 2018, the assessments made against Defendant Joni Mooney, including federal income taxes, interest, and penalties, for the 2002, 2003, 2013, and 2014 tax years maintains a balance of $30,240.11. (Kennedy Decl., [Docket No. 122], at ¶ 5).

7

### B. Defendants' Civil Penalty Assessments

In 2009, Defendants filed joint tax returns for the 2004, 2005, 2006, 2007, and 2008 tax years. (Wallin Decl., [Docket No. 123], at Gov't's Exs. 30–34). Upon receipt and inspection of those tax returns, a delegate of the Secretary of the Treasury determined that the joint tax returns for the 2004, 2005, 2006, 2007, and 2008 tax years which were all filed in 2009 were each frivolous. (Wallin Decl., [Docket No. 123], at Gov't's Exs. 30–34). Accordingly, the delegate of the Secretary of the Treasury assessed a penalty for each frivolous tax return. (Wallin Decl., [Docket No. 123], at Gov't's Exs. 30–34).

As noted above, these tax penalty assessments are presumed correct. See, e.g., N.S. State Univ., 255 F.3d at 603; Hanson, 2005 WL 3116099, at *2. And Defendants have failed to proffer any admissible evidence to rebut or dispute the penalty assessments presented by the United States in the present case. Accordingly, the United States is entitled to summary judgment such that the federal tax penalty liability assessments against Defendants should be reduced to judgment.

As of June 9, 2016, the penalty assessment against Defendant William Mooney for filing frivolous tax returns for the 2004, 2005, 2006, 2007, and 2008 tax years was $34,928.99. (Certifications of Assessment and Payments, [Docket No. 108], at Gov't's Exs. 6–10). The IRS sent notices of the above assessments and demands for payments to Defendant William Mooney. (See, Id. at Gov't's Exs. 6–10). As of January 1, 2018, the penalty assessment against Defendant William Mooney for filing frivolous tax returns for the 2004, 2005, 2006, 2007, and 2008 tax years was $37,907.70. (Kennedy Decl., [Docket No. 122], at ¶ 9).

As of June 9, 2016, the penalty assessment against Defendant Joni Mooney for filing frivolous tax returns for the 2004, 2005, 2006, 2007, and 2008 tax years was $30,250.73.

(Certifications of Assessment and Payments, [Docket No. 108], at Gov't's Exs. 11–15). The IRS sent notices of the above assessments and demands for payments to Defendant Joni Mooney. (See, Id. at Gov't's Exs. 11–15). As of January 1, 2018, the penalty assessment against Defendant Joni Mooney for filing frivolous tax returns for the 2004, 2005, 2006, 2007, and 2008 tax years was $37,630.81. (Kennedy Decl., [Docket No. 122], at ¶ 9).

### C.  Lien Enforcement on Property

The United States next seeks a finding that the United States has valid and subsisting liens against Defendants' property (the "Property").[1]

In the present case and as discussed above, Defendants have outstanding federal tax liabilities which they have failed to pay. "If the tax payer does not pay the amount assessed, then the amount automatically becomes a tax lien on all property belonging to the taxpayer . . . ." Pagonis v. United States, 575 F.3d 809, 812 (8th Cir. 2009). In re Nerland Oil, 303 F.3d 911, 916 (8th Cir. 2002) (providing that federal tax liens attach to all of a taxpayer's property and rights to property as of the date of assessment, if the taxpayer refuses or neglects to pay the tax after notice and demand). Accordingly, the United States is entitled to summary judgment on the issue of tax lines attaching to Defendants' property and rights to property.

However, in the present case that does not end the Court's analysis because the Property is purported by Defendants to actually be held by the entity Defendant Harbor Holdings.

The United States contends that Defendant Harbor Holdings in an alter ego or nominee of Defendants, and therefore the federal tax liens associated with Defendants should still attach to the Property. The United States has moved for Summary Judgment on the issue of whether

---

[1] The Property "is located at 409 6th Avenue Northwest, Little Falls, Minnesota with a legal description of Lots 9, 10, 11, 12, and 13, all in Block 11 of Thayer's Addition to the City of Little Falls, according to the plat thereof, and situate in Morrison, County, Minnesota." (Compl., [Docket No. 1], at ¶ 5).

Defendant Harbor Holdings holds the Property as Defendants' nominee. Therefore, the Court must determine if Harbor Holdings holds the Property as a nominee of Defendants.

"The Government may collect the tax debts of a taxpayer from the assets of the taxpayer's nominee, instrumentality, or alter ego." Scherping, 187 F.3d at 801 (internal quotation marks omitted) (citing G.M. Leasing Corp., 429 U.S. at 350–51; Hortons Diary Inc. v. United States, 986 F.2d 286, 291 (8th Cir. 1993); F.P.P. Enterprises v. United States, 830 F.2d 114, 117–18 (8th Cir. 1997)); see, Happy Home Health Care, Inc. v. United States, No. 13-cv-3646 (MJD/HB), 2015 WL 13021797, at *2 (D. Minn. Mar. 31, 2015) ("Property of an entity that is found under state law to be the alter ego of a taxpayer maybe levied to satisfy the debts of the tax payer.") (citing G.M. Leasing Corp. v. United States, 429 U.S. 338, 350–51 (1977); see also, United States v. Scherping, 187 F.3d 796, 801 (8th Cir. 1999)).

It is undisputed that from 1982 to 2004, Defendants owned the Property. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 16; Def. William Mooney Dep., [Docket No. 124-2], at 13).

On September 20, 2004, the Harbor Holdings Trust was created as a purported "Pure Trust" naming as Trustees Ronald Ottaviano and Michael Balie. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 25). The Trust creation documents appointed Defendant William Mooney as General Manager of Harbor Holdings. (Id. at 8). The "Memorandum or Trust" provided that the function of the General Manager was "to operate the business activities of the Trust and to be a signatory on all bank accounts." (Id. at 7). Defendant William Mooney, as General Manager, also signed with the members of the Board of Trustees on various Trust documents. (Id. at 9). The Board of Trustees elected "Mid-Atlantic Trustees and Administrators" as the Trust's "Professional Independent Trustee" and "agreed to compensate Mid-Atlantic Trustees and Administrator at a rate of $600 per year." (Id. at 13).

On October 4, 2004, Defendant William Mooney purported to "exchange" the Property to Harbor Holdings. (Id. at 11). The "Certificate of Exchange" does not provide for what the Property was exchanged. (Id.). In his October 10, 2017, deposition Defendant William Mooney testified that in exchange for the Property he received "Certificates" with no monetary value. (Def. William Mooney Dep., [Docket No. 124-2], at 19). The Quit Claim Deed recorded by Defendants which purports to memorialize the "exchange" of the Property to Harbor Holdings and transfer the Property to Harbor Holdings provides that "[t]he sale price or other consideration given for this property was $500.00 or less." (Wallin Decl., [Docket No. 123], at Gov't' Ex. 16). The Morrison County tax statement for the Property that same year provides that the estimated market value was $69,200.00. (Wallin Decl., [Docket No. 123], at Gov't' Ex. 17). Despite this purported conveyance of the Property, the Defendants have continued at all times to reside at the Property without the payment of rent. (Def. William Mooney Dep., [Docket No. 124-2], at 18).

On October 27, 2004, the Board of Trustees of Harbor Holdings gave Defendant William Mooney the "right of survivorship" in the Property and the "right to reside at the property indefinitely." (Wallin Decl., [Docket No. 123], at Gov't's Ex. 26).

The Defendants continued to live at the Property, and they continued to possess the keys to the Property. (Def. William Mooney Dep., [Docket No. 124-2], at 18–19). In his deposition testimony, Defendant William Mooney testified that he continued to mow the lawn at the Property, remove the snow, and maintain repairs on the home. (Id. at 18). Defendant William Mooney further testified that Defendants do not pay rent to remain living at the Property, but they do continue to pay maintenance and utility costs. (Id. at 25–27).

Two Minnesota Power bills dated January 11, 2013, and June 15, 2015, for the Property are in the name of Defendant William Mooney, and a MoneyGram dated January 7, 2013, shows that Defendant Joni Mooney paid the Minnesota Power bill. (Wallin Decl., [Docket No. 123], at Gov't's Exs. 18, 19, 22). A Center Point Energy gas bill dated September 18, 2015, indicates that the gas account associated with the Property was in the name of both Defendants. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 20). A water and sewer bill for the Property is also in the name of Defendant William Mooney, and it is paid by MoneyGram. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 23).

Moreover, the Property is insured solely in the Defendants' names for a residence value of $161,500.00. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 24). In his deposition testimony Defendant William Mooney admitted to paying the home owners insurance, but indicated that it was on behalf of the trustees. (Def. William Mooney Dep., [Docket No. 124-2], at 22–26). However, there is no indication on the insurance policy that anyone other than Defendants is a beneficiary of or associated with the policy. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 24). And he testified at his October 17, 2017, deposition that he continued to work just enough hours to pay the tax on the property. (Def. William Mooney Dep., [Docket No. 124-2], at 18–26).

On August 31, 2015, a meeting of the Board of Trustees of Harbor Holdings was convened "to discuss the current affairs of the trust and the IRS's claim to assets in the trust." (Wallin Decl., [Docket No. 123], at Gov't's Ex. 27). The meeting minutes from August 31, 2015, provide that "Mr. Mooney was asked to resign as Manager of trust business and to pay rent for the house he lives in" and that "Mr. Mooney would no longer pay rent in the form of insurance, real estate taxes, repairs, and [m]aintenance" and "[r]ent was set at $400.00 a month till [sic] further notice is given." (Id.). There is, however, no indication in the record by Defendants that

they actually ever paid any rent to Harbor Holdings in exchange for living at the Property or that they stopped paying for the insurance, real estate taxes, repairs, or maintenance. In fact, in his October 10, 2017, deposition, Defendant William Mooney testified that he had not paid rent to anyone for the property but had "exchange[d]" for it in the form of "pay[ing] for their bills for our rent." (Def. William Mooney Dep., [Docket No. 124-2], at 26).

"Generally, federal courts will look to state law to determine whether an entity is an alter ego [or nominee] of a taxpayer." United States v. Johnson, No. 5-cv-3017 (RLE), 2007 WL 1695740, at *12 (D. Minn. Mar. 30, 2007) (alteration in original) (citing Scherping, 187 F.3d at 801). "A nominee is one who holds bare title to property for the benefit of another." United States v. Sabby, No. 12-cv-1799 (PAM/FLN), 2014 WL 988459, at *5 (D. Minn. Mar. 13, 2014) (citing Scoville v. United States, 250 F.3d 1198, 1202 (8th Cir. 2001)). In determining nominee status, Minnesota Courts consider the following factors

(1) Whether the [purported nominee] paid little or no consideration;
(2) Whether the taxpayer placed the property in the [purported nominee's] name in anticipation of a lawsuit or liability;
(3) Whether there is a close relationship between taxpayer and the [purported nominee];
(4) Whether the taxpayer exercises dominion and control over the property; and
(5) Whether the taxpayer continued to enjoy the property.

Sabby, 2014 WL 988459, at *5 (citing Johnson, 2007 WL 1695740, at *12).

All but one of the above factors weighs heavily in favor of finding that Harbor Holdings holds the Property as a mere nominee of Defendants William Mooney and Joni Mooney.

First, the record indicates that Harbor Holdings paid no consideration for the Property as part of the purported conveyance of the Property from Defendants to Harbor Holdings. Defendant William Mooney testified at his October 17, 2017, deposition that he only received "certificates" from Harbor Holdings in exchange for the Property, and his also testified that those

"certificates" have no monetary value. (Def. William Mooney Dep., [Docket No. 124-2], at 19). In addition, the Quit Claim Deed recorded by Defendants which purports to memorialize the "exchange" of the Property to Harbor Holdings and transfer the Property to Harbor Holdings provides that "[t]he sale price or other consideration given for this property was $500.00 or less." (Wallin Decl., [Docket No. 123], at Gov't Ex. 16). Defendants have offered no admissible evidence to refute any of this presented evidence.

As to the factor of whether the taxpayer placed the property in the purported nominee's name in anticipation of a lawsuit or liability, the present record is less clear. However, the Court notes that Defendants' tax liabilities did arise before the purported transfer of the Property to Harbor Holdings.

Next, as to the factor of whether there is a close relationship between the taxpayer and the purported nominee, this factor weighs heavily in favor of finding that Harbor Holdings is Defendants' nominee. Defendant William Mooney served as Harbor Holdings' General Manager from the time of the trust's creation until August 31, 2015. (Wallin Decl., [Docket No. 123], at Gov't Ex. 27). As General Manager, Defendant William Mooney was "to operate the business activities of the Trust and to be a signatory on all bank accounts" including those associated with the Property. (Wallin Decl., [Docket No. 123], at Gov't Ex. 25 at 7, 9). Even after Defendant William Mooney resigned as General Manager, there is no indication in the record that his relationship directly controlling and managing the Property changed in any manner. (See, Def. William Mooney Dep., [Docket No. 124-2], at 23) (providing testimony that Mr. Mooney continues to work to pay the taxes associated with the Property and Defendant Joni Mooney continues to pay the costs associated with the Property). Defendant William Mooney's close relationship with Harbor Holdings is further exemplified by his testifying on behalf of Harbor

14

Holdings' Trustee Ronald Ottaviano in a New Jersey criminal trial involving a tax avoidance scheme. (See, Def. William Mooney Dep., [Docket No. 124-2], at 22–23).

As to the fourth factor regarding whether the taxpayer exercised dominion and control over the property, this factor also weighs heavily in favor of finding that Harbor Holdings holds the Property as Defendants' nominee. It is undisputed that Defendants have continued to live at the Property at all times relevant to the present case, and Defendants have paid all expenses related to the Property as discussed above. There is no indication in the record that the Trust, or the Trustees, has paid any cost associated with the Property nor taken any action relative to the Property itself. Even after the purported transfer of the Property to Harbor Holdings, Defendants retained the "right of survivorship" in the Property and the "right to reside at the property indefinitely." (Wallin Decl., [Docket No. 123], at Gov't's Ex. 26). There is no evidence in the record to indicate that any right Defendants had relative to the Property was ever taken from them after the purported conveyance of the Property to Harbor Holdings. See, Johnson, 2007 WL 1695740, at *12–13 (finding that factors weighed in favor of finding that defendant was nominee of taxpayer where taxpayer had "little, if any substantive change in their use of the property," after the purported conveyance to the nominee and where nominee did not pay for the utilities, phone bills, or acquire homeowners insurance on the property). Defendants also continued to pay for and maintain home owner's insurance on the Property in solely their names with no indication on that policy that Harbor Holdings was in anyway associated with the home owner's insurance policy. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 24). In fact, the Defendants, and not Harbor Holdings, were named as the loss payees under the home owner's insurance policy.

Finally, the factor of whether the taxpayer continued to enjoy the property, weighs heavily in favor of finding that Harbor Holdings holds the Property as Defendants' nominee. As noted above, it is undisputed that the Defendants continually resided at the Property from its acquisition in 1982 through at least October 17, 2017, when Defendant William Mooney testified that Defendants were then still living at the Property. (See, Def. William Mooney Dep., [Docket No. 124-2], at 18). Moreover, there is no indication in the record now before the Court that Defendants have moved from the Property; rather, it appears that Defendants continue up to the present time to reside at the Property. Defendants enjoy the same use of and control over the Property as they did before it was purportedly conveyed to Harbor Holdings. See, Johnson, 2007 WL 1695740, at *12–13 (finding that factors weighing in favor of finding that defendant was nominee of taxpayer where taxpayer had "little, if any substantive change in their use of the property").

Accordingly, based on the weighing of all of the factors as discussed above, the Court finds that Harbor Holdings holds the Property only as Defendants' nominee, and the United States is entitled to summary judgment on that issue.

As noted above, "[t]he Government may collect the tax debts of a taxpayer from the assets of the taxpayer's nominee, instrumentality, or alter ego." Scherping, 187 F.3d at 801 (internal quotation marks omitted) (citing G.M. Leasing Corp., 429 U.S. at 350–51; Hortons Diary Inc., 986 F.2d at 291; F.P.P. Enterprises, 830 F.2d at 117–18). In the present case, this means that the United States may collect the tax debts of Defendants from the Property even though it is purportedly held by Defendant Harbor Holdings.

To perfect the lien against the property, a notice of federal tax lien must be filed in the real property records of the county where the property is located. 26 U.S.C. § 6323(f)(1)(A)(i)

16

and (2)(A). In the present case, the United States filed the requisite federal tax liens with the County Recorder in Morrison County where the Property is located. (Wallin Decl., [Docket No. 123], at Gov't's Ex. 36). Therefore, the tax liens associated with Defendants tax liabilities are properly attached to the Property. <u>Scherping</u>, 187 F.3d at 801; <u>Pagonis</u>, 575 F.3d at 812; <u>In re Nerland Oil</u>, 303 F.3d at 916; <u>Bierbrauer</u>, 936 F.2d at 374; 26 U.S.C. § 6323(f)(1)(A)(i) and (2)(A).

In light of the foregoing conclusion, the Court may order the Property subject to sale. <u>See</u>, 26 U.S.C. § 7403(c). District Courts have the authority to order the sale of property encumbered by a tax lien, and "to render such judgments and decrees as may be necessary or appropriate" to complete that sale. 26 U.S.C. § 7402(a). However, before doing so, the Court must determine the merits of any claims by other interested parties on the Property. <u>See</u>, <u>Id.</u>

In the present case, there have been no claims by any other interested parties on the Property. The United States did, however, name Harbor Holdings as a Defendant in the present case because it may have claimed an interest in the Property.[2] Defendant Harbor Holdings was properly served in the present case on August 22, 2016, by serving Harbor Holdings Trustee, Kerry Augustine. (<u>See</u>, Aff. of Service [Docket No. 14]). Defendant Harbor Holdings has not properly responded to the present Complaint or properly asserted an interest as to the Property presently at issue.[3] The time has long since expired for Defendant Harbor Holdings to file an

---

[2] Under 26 U.S.C. § 7403(b), the United States is required to name "[a]ll persons having liens upon or claiming any interest" in the subject property in a tax line enforcement suit.

[3] Although Mr. Augustine, as the Trustee of Harbor Holdings, and Defendant William Mooney, as a purported representative of Harbor Holdings, attempted to submit documents on behalf of Harbor Holdings, those documents were stricken by the Court as neither Mr. Augustine not Defendant William Mooney is an attorney licensed to practice law in the State of Minnesota or in the District of Minnesota and therefore, they may not represent the entity Harbor Holdings. (<u>See</u>, [Docket Nos. 15, 19, 23, 24, 25, 28, 29, 31, 35, 45, 46]). Mr. Augustine has again attempted to file an Affidavit Notice of Interest, [Docket No. 129], on behalf of Defendant Harbor Holdings, however, the Court again notes that because Mr. Augustine is not an attorney licensed to practice law in the State of Minnesota or before this Court, he may not file documents on behalf of Defendant Harbor Holdings. Defendant Harbor Holdings

answer or otherwise respond to the United States' claim. In fact, on February 6, 2017, the Clerk of Court entered a clerk's entry of default against Defendant Harbor Holdings. (Clerk's Entry of Default [Docket No. 50]).

Accordingly, Plaintiff is entitled to default judgment against Defendant Harbor Holdings. See, United States v. Norlem, No. 7-cv-4799 (JRT/FLN), 2009 WL 2998528, at *1 (D. Minn. Aug. 25, 2009) (entering default judgment against a third-party who was named as a defendant in a tax lien suit due to the possibility that she may have had interest in the real property there at issue after the third-party failed to respond to the claims), report and recommendation adopted, 2009 WL 5943237 (D. Minn. Sept. 15, 2009).

Thus, the Court finds that a forced sale of the Property is appropriate. The Property should be sold and the proceeds of sale should be paid to the United States to satisfy or partially satisfy the recommended judgment in favor of the United States on Defendants' federal income tax and civil penalty liabilities.

### D. Defendants' arguments

As noted above, in response to the United States' Motion for Summary Judgment, Defendants have only offered meaningless and routinely rejected tax protestor documents. (See, [Docket Nos. 128–130, 132–134, 140, 141, 144]). The Court need not address these arguments as they have been previously rejected by this Court, and that rejection is now the law of the case. Indeed, every court to have considered any of the arguments raised by Defendants has soundly rejected those arguments. However, in an abundance of caution the Court will address the documents Defendants submitted in response to the United States' Motion for Summary Judgment.

---

was warned by the Court that it was required to find counsel, that it could not proceed without counsel, and that failing to find counsel could lead to default judgment being entered against it. (Order [Docket No. 36]).

Defendants first filed a document entitled Defendant's Demand For Absolute Equity, [Docket No. 128], which asserts that Defendants are "Native Americans" and "private Citizens who demand "a hearing in absolute equity" and a certificate "in writing [of their] right of subrogation and [a] full accounting in this matter." In their self-titled Affidavit in Support of their Demand for Equity, Defendants purport to "offer a bond for settlement and closure of this case for the benefit of all parties concerned and this court." (Affidavit in Support of Demand to Sow Cause, [Docket No. 132], at 2). Defendants also filed Exhibit Indexes, [Docket Nos. 130, 133], containing several forms purporting to assert that Defendants are "living" native persons who are not subject to the jurisdiction of this Court and who are only agents of the fictional persons named as Defendants in the present case. Defendants also filed a document entitled Amicus Curiae Demand for Equity and Right of Subrogation, [Docket No. 134], in which Defendants repeat the arguments of their previously filed documents, and again assert that they are "not a legal fiction" and "demand this court certify [their] right of subrogation . . . ." Lastly, Defendant William Mooney also submitted a Letter, [Docket No. 140], addressed to the Honorable Susan Richard Nelson, asserting that he was "submitting the debtors Bond for extinguishment of all debts, plus any court costs, and fees to bring closure to this debt and matter." Defendant William Mooney attached to that Letter a Bill of Exchange purporting to pay the United States the sum of $5,000,000.00 from the "special deposit and charge account" associated with Defendant William Mooney's social security number and birth certificate. (See, Letter [Docket No. 140]).

Defendants here again repeat their assertions that they are "living" person distinct from those "fictional" entities named as Defendants, and they purport to settle the present case through a disbursement of funds from the "special deposit and charge account" the United States

Government maintains on behalf of every citizen. However, each of these arguments is pure whimsy without any effect whatsoever, and they have been previously rejected by this Court, as well as, by every Court to have ever considered these arguments.

Despite their contention that they are "Minnesotans, not U.S. Citizens or so called 'Sovereign Citizens,'" Defendants here again attempt to raise the type of "sovereign citizen" or "revisionist legal theory" claims which have universally been found without substance of any kind. Adherents of such claims or defenses "believe that they are not subject to governmental authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011) (citation omitted). As noted several times before, however, these claims and defenses have been found universally without merit. See, e.g., United States v. Studley, 783 F.2d 934, n. 3 (9th Cir. 1986) (rejecting the argument that an absolute, freeborn, and natural individual need not pay federal taxes and noting that "this argument has been [so] consistently and thoroughly rejected by every branch of the government for decades . . . [that] advancement of such utterly meritless arguments is now the basis for serious sanctions imposed on civil litigants who raise them").

Many "courts have encountered these claims before, namely, in the antics and writing of extremist who wish to dissociate themselves from the social compact undergirding this nation's democratic institutions, including the independent judicial branch of government." United States v. Mitchell, 405 F. Supp. 2d 602, 605 (D. Md. 2005). These other courts, including Mitchell have summarized these types of theories noting that:

> [t]hough the precise contours of their philosophy differ among the various groups, almost all antigovernment movements adhere to a theory of a "sovereign" citizen. . . . The arguments put forth by these groups are generally incoherent legally, and vary greatly among different groups and different speakers within those groups.

They all rely on snippets of 19th Century court opinions taken out of context, definitions from obsolete legal dictionaries and treatises, and misplaced interpretations of original intent. One of the more cogent [—] in the sense that it is readily followed—arguments is that there were no United States citizens prior to the ratification of the 14th Amendment. All Americans were merely citizens of their own state and owed no allegiance to the federal government. As a result of that amendment, however, Congress created a new type of citizen—one who now enjoyed privileges conferred by the federal government and in turn answered to that government.

Id. at 605.

Other Courts describe a similar theory based upon a belief that the passage of the Fourteenth Amendment somehow led to creation of fictitious entities:

[s]upposedly, prior to the passage of the Fourteenth Amendment, there were no U.S. citizens; instead, people were citizens only of their individual states. Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional. The federal government, however, has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person.[4] Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship. However, the government cannot hold the profits it makes from this use of its citizens and their property in the general fund of the United States because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (i.e., the real people represented by the fictitious entities). Therefore, the government holds the profits in secret, individual trust accounts, one for each citizen.

Bryant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 758–59 (W.D. Va. 2007); aff'd 282 Fed. App'x 260 (4th Cir. 2008) (footnote in original); see, Gravatt v. United States, 100 Fed. Cl. 279, 283 (2011).

While the Defendants may not have labelled their claims as such, the same antics as described above are the exact type of assertions and arguments the Defendants here again raise in

---

[4] [Apparently, proponents of this theory claim] the name of the fictitious entity is the real person's name [but written] in all-capital letters, which apparently explains, [according to the proponents,] why names are commonly written in all-capital letters on birth certificates, driver's licenses, and other government documents.

response to the present Motion for Summary Judgment. As already noted, the exact arguments raised by the Defendants, as well as, numerous variations of these arguments have routinely and correctly been repeatedly rejected by the Eighth Circuit as "meritless," "absurd," and "entirely frivolous." See, e.g., United States v. Jonassen, 759 F.3d 653, 657 n. 2 (7th Cir. 2014) (providing that sovereign citizen arguments can take many titles, but at their core "assert that the federal government is illegitimate and insist that they are not subject to its jurisdiction. The defense has no conceivable validity in American law.") (quoting United States v. Schneider, 910 F.2d 1569, 1570 (7th Cir. 1990)); United States v. Watson, 1 F.3d 733, 734 (8th Cir. 1993) (finding defendant's assertion that he is a "free citizen of the State of Oklahoma" and not a United States citizen because he has never lived or worked in the District of Columbia or territories of the United States to be "meritless"); United States v. Kruger, 823 F.2d 587, 587–88 (8th Cir. 1991) (rejecting as "absurd" defendants' argument that the Thirteenth, Fourteenth, and Fifteenth Amendments of the United States Constitution unlawfully bestow citizenship upon "non-white races and other 'artificial statutory person'"); United States v. Schmitt, 784 F.2d 880, 882 (8th Cir. 1986) (finding appellants' arguments that the district court lacked personal jurisdiction over them because they are "Natural Freeman" to be "entirely frivolous"); United States v. Sileven, 985 F.2d 962, 970 (8th Cir. 1993) (finding similar arguments that defendant was not a federal citizen "plainly frivolous" and noting that further discussion was unnecessary); United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) (rejecting as "meritless" and "frivolous" appellants' assertions that they were not citizens of the United States, but instead "Free Citizens of the Republic of Minnesota" and that the district court had failed to establish "inland jurisdiction"); see, also, United States v. Garcia, 684 Fed. App'x 589, 589 (8th Cir. 2017) (rejecting defendant's challenge to the Court's jurisdiction based on his assertion that he is a "private, sovereign, flesh

and blood man" and concluding that the challenge lacked merit); United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented."); United States v. James, 328 F.3d 953, 954 (7th Cir. 2003) ("Laws of the United States apply to all person within its borders."); Schwagerl v. Fed. Nat'l Mortg. Ass'n, No. 11-cv-3578 (DWF/JJK), 2012 WL 2060636, at *4 (D. Minn. Apr. 11, 2012) (finding plaintiffs' argument "that the capitalized versions of their names are separate legal entities from themselves" is without basis or merit); United States v. Beale, No. 10-cv-4933 (ADM), 2011 WL 1302907, at *4 (D. Minn. Apr. 6, 2011) (rejecting similar arguments); United States v. Foster, No. 97-cr-7103 (JMR/RLE), 1997 WL 685371, at *7 (D. Minn. May 27, 1997) (finding defendants' assertion that they were citizens of the "Sovereign Republic County Minnesota State," and that the "United States consists of ten square miles, a/k/a District of Columbia" to be "patently frivolous under the settled law of this Circuit"); United States v. Alexio, No. 13-cv-1017 (JMS), 2015 WL 4069160, at *4 (D. Haw. July 2, 2015); Santiago v. Century 21/PHH Mortg., No. 1:12-cv-2792 (KOB), 2013 WL 1281776, at *5 (N.D. Ala. Mar. 27, 2013) (citing cases rejecting similar arguments); Paul v. New York, No. 13-cv-5047 (SJF/AKT), 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) ("The conspiracy and legal revisionist theories of 'sovereign citizens' are not established in law in this court or anywhere in this country's valid legal system."); Rice v. Maryland, No. 9-cv-1947 (RWT), 2010 WL 2773575, at *3 n. 2 (D. Md. July 13, 2010) ("Such a ['flesh and blood' sovereign] defense has been repeatedly rejected and has been viewed by [the Fourth Circuit] as a 'self-defeating legal strategy.'") (citing United States v. Jenkins, 311 Fed. App'x 655, 656 (4th Cir. 2009)).

Moreover, as Defendants in the present case have been previously informed, Defendants' sovereign-citizen-styled-arguments have already previously been found by the undersigned, as well as, by the Honorable Susan Richard Nelson, to be wholly without merit. (See, Report and Recommendations [Docket Nos. 74, 112], Orders [Docket No. 36, 78], 143). As also previously noted, those prior holdings are now the law of the present case. See, Sprint Commc's Co., L.P. v. Lozier, 860 F.3d 1052, 1056 (8th Cir. 2017) ("The law-of-the-case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" (citations omitted)).

Defendants now appear to assert that they are attempting to settle the claims in the present case by conveying the funds in a "special deposit and charge account" to the United States Government. This purported "special deposit and charge account" is similar to the type of "secret, individual trust account" referred to in Bryant, 524 F. Supp. 2d at 759. This claim too, that the United States has secret accounts containing millions of dollars for every citizen, has also been squarely and soundly rejected by every Court to consider such an argument and found as "patently frivolous." See, e.g., Bryant, 524 F. Supp. 2d at 759–760; United States v. Belt, No. 10-cv-2921, 2011 WL 3236065, at *3 (D. Md. July 26, 2011), subsequent mandamus proceeding sub nom. In re Belt, Fed. App'x 391 (4th Cir. 2012); United States v. Beeman, No. 10-cv-237, 2011 WL 2601959, at *12 (W.D. Pa. June 30, 2011).

Therefore, the Court recommends that the United States' Motion for Summary Judgment, [Docket No. 119], be **GRANTED** in all respects.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The United States' Motion for Summary Judgment, [Docket No. 119], be **GRANTED**, as set forth above;

2. The Clerk of Court should enter judgment against William J. Mooney and in favor of the Unites States in the amount of $101,262.91, plus statutory interest, penalties, and additions accruing after January 1, 2018, until judgment is paid for William J. Mooney's federal income tax debts for the tax years 2002, 2003, 2004, 2013, and 2014, and for William J. Mooney's frivolous-filing penalties for tax years 2004, 2005, 2006, 2007, and 2008;

3. The Clerk of Court should enter judgment against Joni T. Mooney and in favor of the Unites States in the amount of $67,870.92, plus statutory interest, penalties, and additions accruing after January 1, 2018, until judgment is paid for Joni T. Mooney's federal income tax debts for the tax years 2002, 2003, 2004, 2013, and 2014, and for Joni T. Mooney's frivolous-filing penalties for tax years 2004, 2005, 2006, 2007, and 2008;

4. The United States has valid and subsisting federal tax liens on all property and rights to property of William J. Mooney and Joni T. Mooney, and may enforce its liens against William J. Mooney and Joni T. Mooney's property to attempt to satisfy those federal tax liabilities;

5. The Unites States' federal tax liens attach to William T. Mooney and Joni T. Mooney's real property located at 409 6th Avenue Northwest, Little Falls, Minnesota, within this judicial district and more particularly described as: Lots 9, 10, 11, 12, and 13, all in Block 11 of Thayer's Addition to the City of Little Falls, according to the plat thereof, and situated in Morrison, County, Minnesota (the "Property");

6. The United States is authorized to enforce its federal tax liens against William T. Mooney and Joni T. Mooney's interest in the Property, so that the proceeds of the sale of the Property may be distributed to the United States to be applied to William T. Mooney and Joni T. Mooney's outstanding federal income tax liabilities;

7. The United States shall be authorized to sell the Property subject to further Order of this Court; and

8. Defendant Harbor Holdings has no property interest in the Property;

9. The proceeds of any sale shall be distributed to the United States to be applied to William T. Mooney and Joni T. Mooney's outstanding federal tax liabilities.

Dated: April 19, 2018                                          s/Leo I. Brisbois
                                                              Leo I. Brisbois
                                                              United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).