PUBLICATIONS UNIT FILE COPY
Must be returned

*attachment #5*

*16-CV-02547*

# Calendar No. 118

| 76th Congress } | | |
|---|---|---|
| 1st Session } | SENATE | { REPORT No. 112 |

## PUBLIC SALARY TAX ACT OF 1939

FEBRUARY 24, 1939.—Ordered to be printed

Mr. BROWN, from the Committee on Finance, submitted the following

## REPORT

#### [To accompany H. R. 3790]

The Committee on Finance, to whom was referred the bill (H. R. 3790) relating to the taxation of the compensation of public officers and employees, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

A desire to obtain the end toward which this legislation is directed has been felt generally since the adoption of the graduated income tax. It has been widely conceded that a fair and effective income tax ought to subject the compensation of public officers and employees to the same general burden of taxation as is borne by private citizens.

The need for this legislation was emphasized by the President in his message dated April 25, 1938, and again in his message dated January 19, 1939. In addition to pointing out the equity involved in subjecting the future salaries of those who earn their livelihood in governmental service to the income-tax laws of the Nation and of the several States, the President, in his message dated January 19, 1939, drew attention to the requirement of immediate legislation to prevent recent judicial decisions from operating in such a retroactive fashion as to impose tax liability for past years on State, local, and other employees who, in good faith, believed their compensation for such years was exempt from Federal tax.

Title I of the bill subjects to Federal income tax for taxable years beginning after December 31, 1938, the compensation of all State and local officers and employees and grants consent to the States to tax the compensation received after December 31, 1938, by Federal officers and employees. Title II, in accordance with the President's message, relieves from Federal income taxation for taxable years commencing prior to January 1, 1939, the compensation of such State and local officers and employees as were affected by recent Court decisions

The scope of the relief granted by title II and the method of affording such relief therein provided have been devised as an integral part of the complete treatment of the problem with respect to both the

**Attachment 5 - page 1 of 15**

SCANNED
JUL 24 2018
U.S. DISTRICT COURT MPLS

future and the past.  In view of this interrelation between titles I and II, it is imperative that the bill be passed in its entirety.  Any separation of title I would require a reexamination of the scope and functioning of title II.  Moreover, your committee realizes that the relief accorded in title II will render moot certain cases now pending which, if they were allowed to proceed to final decision, would settle important phases of the problem of intergovernmental tax immunities.  The disadvantages of such abandonment of pending litigation, however, are outweighed by the fact that future taxation of all State and local salaries is clearly established by the express legislation in title I.

The entire problem of intergovernmental immunity, with respect to income taxation, has been under the scrutiny of the Special Committee on Taxation of Governmental Securities and Salaries under the chairmanship of Mr. Brown.  This committee was established by Senate Resolution 303 (75th Cong., 3d sess.) and consists of three members of the Committee on Finance (Mr. Byrd, Mr. Townsend, and Mr. Brown) and three members of the Committee on the Judiciary (Mr. Logan, Mr. Austin, and Mr. Miller).

Considerable testimony, both written and oral, has been presented to this special committee at hearings beginning on January 18, 1939, and ending February 16, 1939.  Many briefs and memoranda were received on various phases of the problem of intergovernmental tax immunities.  However, this material, as well as the oral testimony dealt almost exclusively with the question of the taxation of bond interest.  That committee is not yet prepared to make a recommendation with regard to this question.  Similarly, your committee expresses no opinion upon the taxation of interest from governmental securities.  It believes, as does the special committee, that the problems involved in the two phases of this question present separate and distinct economic and legal aspects and that the Supreme Court may uphold the present bill on grounds different from those applicable to the taxation of bond interest.

Legal authorities, both for and against the President's proposal, agree that there is a real and substantial distinction between the two.  This was brought out by questions propounded by the chairman of the special committee to witnesses appearing at the hearing.  For example, Mr. Epstein, representing the attorneys general of the various States, in response to such a question, stated:

The taxation of salaries may not impede the actual operation of the Government, and, as has been pointed out by Mr. Justice Stone, it does not follow that the taxation of the salary of an official would mean the nonperformance of his services, and it does not mean that the State would lose revenues, or that you would have to increase his salary.

The taxation of interest on bonds takes an entirely different turn, and has an effect on the borrowing power of the State.  So, you have there a basis for distinction.

Further evidence of the existence of such a distinction is shown from the majority opinion in *James* v. *Dravo Contracting Co.*, 302 U. S. 134, decided December 6, 1937,  While this case dealt with the compensation of independent contractors, it clearly draws a distinction between compensation for services and bond interest.  Speaking for the majority of the Court, Mr. Chief Justice Hughes said:

There is no ineluctable logic which makes the doctrine of immunity with respect to Government bonds applicable to the earnings of an independent

**Attachment 5 - page 2 of 15**

contractor rendering services to the Government. That doctrine recognizes the direct effect of a tax which "would operate on the power to borrow before it is exercised" (*Pollock* v. *Farmers Loan & Trust Co.*, supra) and which would directly affect the Government's obligation as a continuing security. Vital considerations are there involved respecting the permanent relations of the Government to investors in its securities and its ability to maintain its credit—considerations which are not found in connection with contracts made from time to time for the services of independent contractors (pp. 152–153).

### ECONOMIC ASPECTS

At the present time, Federal employees are subject to Federal income taxes, but are exempt from State income taxes. State and local employees, on the other hand, are subject to State income taxes, but are exempt from Federal income taxes, unless engaged in proprietary functions. Persons in private employment are subject to both Federal and State taxes. The number of public officers and employees has grown rapidly during the past few years. Combined Federal, State, and local employees for the year 1937 amounted to 3,800,000 and received compensation in the total amount of $5,500,000,000. This combined number represents 12 percent of the number of persons receiving wages and salaries, 13 percent of the total wages and salaries received, and approximately 9 percent of the national income.

There were approximately 2,600,000 State and local employees in 1937, representing a total annual pay roll for that year of $3,600,C00,-000. Many of these employees have salaries below the personal exemptions allowed for income-tax purposes. It is estimated that for 1937, 1,000,000 or 40 percent received $1,000 or less and approximately 2,300,000 or 90 percent received $2,500 or less. Thus, 90 percent of State and local employees, if married, would not be subject to the Federal income tax. In addition, the bill would not result in imposing any further burden upon the large number of these State and local employees who are engaged in proprietary functions and are, therefore, subject to the existing Federal income tax.

From the standpoint of revenue, the exemption of State and local employees from the Federal income tax is of minor importance. It is estimated that the total Federal revenue to be derived from taxing such employees as are now exempt will not amount to more than $16,000,000 annually. However, there are individual cases of special tax privilege which show the unfairness and inequities produced by this exemption. In State and local governments, there are approximately 16,000 employees with annual salaries of over $5,000, including 1,300 with salaries of over $10,000. In case of some of the higher officers, the salaries reach $20,000, $25,000, and even larger amounts. It seems unfair to extend such tax exemption to this class of our citizens when a minor clerk, bookkeeper, or mechanic employed by a private business concern is expected to pay income taxes to both Federal and State Governments. The benefit from tax-exempt salaries is especially great if the recipients have other income, since, in such case, the salary would be subject to surtax in brackets according to the amount of the total income. These public employees are citizens of the United States and it seems hard to believe that requiring them to pay the same taxes that all other citizens pay will interfere with the functions they perform on behalf of State and local governments.

**Attachment 5 - page 3 of 15**

**4**                    PUBLIC SALARY TAX ACT OF 1939

The same situation applies with respect to the Federal employees. They, too, should contribute to the support of their State and local governments, which confer upon them the same privileges and benefits which are accorded to persons engaged in private occupations. Little information has been received as to the revenue to be derived by the State and local governments from the taxation of Federal employees. The diversity in the structures of the various State income taxes, coupled with the difficulties of estimating the number of Federal employees within the taxing jurisdiction, preclude accurate estimate. In 1937 there were approximately 1,200,000 Federal employees receiving $1,900,000,000 in annual compensation. Although a salary distribution for the entire group is not available, information furnished with respect to 400,000 regular full-time civil-service employees show that approximately 6 percent of that group received less than $1,000 and 82 percent less than $2,500, annually. On the average, Federal employees would very possibly pay higher State income taxes than State and local employees would pay Federal income taxes. This is indicated by the fact that the personal exemptions accorded by State income taxes are, in many cases, below those provided by the Federal law and also by the fact that Federal salaries in the low and middle salary range group are generally higher than those paid by State and local governments. It is believed that these employees should share in the cost of their State and local governments to the same extent as private employees.

The unfairness of this tax exemption becomes more apparent with the increased number of States which are adopting personal income taxes. At the present time, 31 States impose personal income taxes on wages and salaries, and the Federal Government receives 23 percent of its revenue from the income tax. Many of these employees who formerly shared in the cost of their State and local governments through the payment of property taxes and other indirect taxes have been relieved of liability where the income tax has been substituted for other forms of taxation.

Employees of governments receive all the benefits of government which their fellow citizens do, and consequently they should also bear their fair share of its costs. The elimination of the tax exemption privilege would not menace the operations of governmental units, but its existence does threaten the progressive income tax principle of "from each according to his ability to pay." Moreover, it discriminates among persons having the same actual income and offers to government no measurable compensating advantages. The unfair consequences of tax-exempt salaries when judged by present standards of social justice require that they be promptly abolished by legislation if this can be done under the Constitution.

CONSTITUTIONAL ASPECTS

The committee has given particular attention to the constitutional problems involved in the proposal to include in the Federal income tax the salaries paid by States and their local subdivisions to their officers and employees. There is no corresponding problem with respect to the State taxation of the salaries paid to Federal officers and employees, since Congress apparently has power to waive any immunity which might attach to its employees.

**Attachment 5 - page 4 of 15**

It is recognized that that there is some doubt as to whether Congress has the power to subject to the Federal income tax the salaries of the Governor or other officers of a State performing functions which could not be performed by a private individual. However, your committee believes that there is sufficient probability that the measure will be held constitutional to justify its enactment.

Such a course of action has had the approval of the Supreme Court. In *Evans* v. *Gore* (1920), 253 U. S. 245, the Supreme Court held unconstitutional a provision in the Revenue Act of 1919 taxing the salaries of Federal judges then in office, notwithstanding the specific prohibition in article III of the Constitution against diminishing the compensation of judges during their term of office.

Speaking for the majority, Mr. Justice Van Devanter called attention to the fact that Congress had regarded the provision as of uncertain constitutionality and had intended the question should be submitted to and settled by the Supreme Court. The opinion cites the House and Senate reports, as well as the statement of the chairman of the House committee in asking the adoption of the provision who said in part that "every man who has a doubt about this can very well vote for it and take the advice * * * that this question ought to be raised by Congress, the only power that can raise it, in order that it may be tested in the Supreme Court, the only power that can decide it" (56 Cong. Rec. 10370, quoted in 253 U. S. at 248, n. 1).

This bill will present a clear-cut issue for determination by the Supreme Court.

The doctrine of intergovernmental immunity does not come from the language of the Constitution itself, but stems from the decision of the Court in the famous case of *McCulloch* v. *Maryland* (4 Wheat. 316) (1819). Maryland had enacted legislation designed to penalize the Bank of the United States in the operation of branches in Maryland. The legislation provided that if any bank established a branch office without State authority, any notes issued thereby must be in specified denominations and must be printed on stamped paper purchased at prescribed rates from the treasurer of the Western Shore. The bank could escape this requirement only by the payment, in advance, of $15,000. The Court held this legislation invalid on the ground that the States were powerless to hinder or obstruct the functions of the Federal Government. The plan was so devised as to make it applicable only to the Bank of the United States, as that bank was the only bank that had established branches in the State without State authority. Thus, its effect was to apply in a discriminatory manner toward the Bank of the United States. It should be noted that the Court did not rest its decision on discrimination and that the Court subsequently rejected the argument that this case protected Federal instrumentalities only from discrimination and not from general taxation. However, Mr. Justice Stone, speaking for the majority in *Helvering* v. *Gerhardt* (304 U. S. 405) (1938), emphasized the existence of discrimination as a vital factor in the *McCulloch case.*

The next case in this series of precedents was *Dobbins* v. *Commissioner* (16 Pet. 435) (1842). The facts were that Daniel Dobbins, a captain in the United States Revenue Service, was in command of a United States revenue cutter in the Erie Station in Pennsylvania. He

**Attachment 5 - page 5 of 15**

6          PUBLIC SALARY TAX ACT OF 1939

was rated and assessed as a citizen and resident of Erie County for county taxes upon his office as captain in such United States service. The Court held that the tax was invalid, as it was not competent for the State legislature to lay a tax on the salary or emoluments of an officer of the United States. This decision was justified upon the theory that a governmental officer was a means or instrumentality employed for carrying out the legitimate powers of the Federal Government with which the States could not interfere by taxation or otherwise, and that such officer's salary was inseparably connected with the office; that, if the officer, as such, was exempt, the salary assigned to him for his maintenance while holding office was also, for like reasons, equally exempt.

The Supreme Court, relying on the *McCulloch* and *Dobbins cases*, ruled in the case of *Collector* v. *Day* (11 Wall. 113) (1870), that this immunity was reciprocal in character and that, therefore, Congress had no power under the Constitution to lay the Federal income tax upon the compensation of a State probate judge. This decision did not rest upon any constitutional right of a State officer to be exempt from a nondiscriminatory Federal tax; nor was the purpose of the immunity to confer a personal privilege upon the State officer. The reason for the invalidity of the tax was that it was regarded as burdening the functions of State government, the Court going on to say:

> It is admitted that there is no express provision in the Constitution that prohibits the General Government from taxing the means and instrumentalities of the State, nor is there any prohibiting the States from taxing the means and instrumentalities of that Government. In both cases the exemption rests upon necessary implication and is upheld by the great law of self-preservation; as any government, whose means employed in conducting its operation is subject to the control of another and distinct government, can exist only at the mercy of that government. Of what avail are these means if another power may tax them at discretion? (P. 127.)

When this case was decided, it was thought to apply to all State officers and employees. Later, the Government took the position that the immunity doctrine applied only to employees engaged in the exercise of essential governmental functions and this view was upheld by the Supreme Court. The decision in *Collector* v. *Day* has not been overruled, but the application of its doctrine has been considerably limited by later decisions.

For example, in *Helvering* v. *Powers*, 293 U. S. 214 (1934), it was held that the compensation of members of the board of trustees of the Boston Elevated Railway was subject to taxation by the Federal Government on the ground that such an activity constituted a departure from the usual governmental functions, even though the enterprise was undertaken for what the States conceive to be a public benefit. For the same reason, employees of State liquor stores have been held subject to Federal taxation. In *Metcalf and Eddy* v. *Mitchell*, 269 U. S. 514 (1926), the Supreme Court held that consulting engineers engaged to advise State and political subdivisions with reference to water and sewerage projects were not State's officers or employees but independent contractors and, therefore, subject to the Federal net income tax. And in the *Dravo case*, 302 U. S. 134, the Court even held that the compensation of an independent contractor, working for the Federal Government in West Virginia, was subject to the State's 2-percent gross-receipts tax. However, it should be noted

**Attachment 5 - page 6 of 15**

that the Federal Government conceded that the tax, even though it increased its costs, did not hinder or impede its function.

To the same effect is the case of *Silas Mason Co.* v. *Washington* (302 U. S. 186) (1937), holding that a gross receipts tax imposed by the State could be applied to the amounts received by a contractor performing, under contract with the Federal Government, work on the Grand Coulee Dam in Washington.

Then, in 1937, in *Brush* v. *Commissioner* (300 U. S. 352) the Court found that the maintenance of the New York water supply system was an essential governmental function, and that the Federal income tax could not be applied to the compensation of an engineer employed in this activity. However, under the Treasury regulations there applicable, the salaries of State and local officers and employees engaged in essential governmental functions were specifically exempt, and, as the Government did not challenge this regulation, the pertinent question was not before the Court. The Court in *Helvering* v. *Gerhardt*, 304 U. S. 405, confined the decision in the *Brush* case to that Treasury regulation.

The next case of importance was that of *Helvering* v. *Therrell* (303 U. S. 218) (1938). Here the employees involved were attorneys or liquidators, appointed by State comptrollers, or like officers, for work in the liquidation of closed financial institutions. Their compensation came from the assets of the closed institution being liquidated, although the work was carried on by statutory authority under a department of the State government and was under the direction and control of State officers. Their compensation was held to be subject to the Federal income tax. *363*

Finally, we reach the *Gerhardt case* (~~403~~ U. S. 405) (1938) which held that employees of the New York Port Authority were subject to the Federal income tax. The reasoning of the Court in the *Gerhardt case* indicates that if a State is performing a function which could have been undertaken by a private person, the employees of the State engaged in the performance of such function are not immune from the Federal taxing power. Under this theory it seems that school teachers, State hospital employees, and other employees performing functions which are not indispensable to the existence of the State government are subject to the Federal income tax. Furthermore, the Court indicates that it has never ruled expressly on the precise question whether the Constitution grants immunity from Federal income tax to the salaries of State employees performing at the expense of the State services of the character ordinarily carried on by private citizens. This leaves open the question as to whether or not a stenographer, a bookkeeper, or a person who is not an officer of a State or political subdivision is entitled to exemption from the Federal income tax.

The reasoning of the Court in the *Gerhardt case* may be summarized as follows: By granting immunity beyond the necessity of protecting the State, the burden of the immunity is thrown upon the National Government with benefit only to a privileged class of taxpayers. While the State might possibly be affected by the tax, the burden on the State is so speculative and uncertain that if allowed it would restrict the Federal taxing power without affording any corresponding tangible protection to the State government. The taxpayers are citizens of the United States, and bound to contribute to its support.

**Attachment 5 - page 7 of 15**

Even if the States should have to raise their salaries, the tax does not curtail any of those functions which have been thought hitherto to be essential to their continued existence as States. To insure its continued existence, it is not ordinarily necessary to confer on the State a competitive advantage over private persons.

The Court in the *Gerhardt case* did not overrule *Collector v. Day*, which involved the salary of an officer engaged in the performance of an indispensable function of the State which could not be delegated to private individuals. However, the *Gerhardt case* certainly narrowed the application of the immunity rule. The only basis for the immunity doctrine is the protection which it affords the continued existence of the State. It is believed that there is considerable support for the proposition that the Court will overrule or distinguish *Collector v. Day*, and hold that a nondiscriminatory Federal net income tax applying to all citizens, public as well as private, will not burden the functions of State or local governments. The reasons why the Court may not now feel obliged to follow *Collector v. Day* are as follows:

1. In *Collector v. Day*, the Court held the Federal income tax, enacted during the Civil War, unconstitutional as applied to the salary of a judge of a State court. The Civil War Income Tax Acts provided a quite limited number of deductions from gross income. The so-called net income tax there enacted, accordingly, rather closely approximated a tax upon gross income. The tax would, therefore, much more probably be applied to each dollar of the salary paid Judge Day than would be the case under modern income-tax legislation. The importance of this distinction is well illustrated by the recent decision of the Court in *Hale v. State Board*, 302 U. S. 95 (1937). There the Court said, in reference to a net income tax imposed by the State, that it was not necessarily in violation of the State statute exempting its bonds from taxation. Among other reasons for this, Mr. Justice Cardozo said, was that—

> The returns from his occupation and investments are thrown into a pot, and after deducting payments for debts and expenses as well as other items, the amount of the net yield is the base on which his tax will be assessed.

2. The Civil War Income Acts were a novelty in fiscal legislation. The ordinary burdens of government were met largely, in the case of the Federal Government, through excise taxes; and, in the case of the State governments, through property as well as excise taxes. Faced by the emergency of the Civil War, the Congress directed the tax at income. The feeling of the State officers who were taxed and of the judges who considered its validity must have been measurably influenced by the exceptional nature of the tax. To tax income received from a State would seem much like taxing the State itself. Today, however, the Court has said, in relation to a claim for tax immunity on the part of an employee of the New York Port Authority, that: "The effect of the immunity if allowed would be to relieve respondents of their duty of financial support to the National Government" (*Helvering v. Gerhardt*, 304 U. S. 405).

3. The statute construed in *Collector v. Day* afforded no reciprocal right to the States to tax the salaries of Federal employees. In this respect, it might be said to be discriminatory against the States. The proposed legislation does permit the States to tax Federal salaries.

**Attachment 5 - page 8 of 15**

PUBLIC SALARY TAX ACT OF 1939                    9

4. *Collector* v. *Day* was decided in 1870. Since that time, the Supreme Court has not invalidated a Federal net income tax on a State officer or employee, with the possible exception of the *Brush case*, which was placed upon the failure of the Government to challenge a Treasury regulation, since amended, which exempted salaries paid "in connection with an essential governmental function."

5. The reasoning contained in the decisions referred to as narrowing the application of the doctrine laid down in *Collector* v. *Day*, cited supra, clearly indicates that the determination of whether or not such a tax unduly burdens State functions is as much an economic as a legal question. Just when a nondiscriminatory income tax, laid by one government upon the compensation of the employees of another governing body, becomes a restraining or hampering influence is a matter of practical effect and susceptibility to economic measurement.

In this connection, Mr. Justice Stone, speaking for the majority of the Court in the *Gerhardt case*, and in referring to the principal emphasized in these cases which limit the immunity doctrine, said:

> The other principle exemplified by those cases where the tax laid upon individuals affects the State only as the burden is passed on to it by the taxpayer, forbids recognition of the immunity when the burden on the States is so speculative and uncertain that if allowed it would restrict the Federal taxing power without affording any corresponding tangible protection to the State government; even though the function be thought important enough to demand immunity from a tax upon the State itself, it is not necessarily protected from a tax which may well be substantially or entirely absorbed by private persons.

And further:

> The State and National Governments must co-exist. Each must be supported by taxation of those who are citizens of both. The mere fact that the economic burden of such taxes may be passed on to a State government and thus increase to some extent, here wholly conjectural, the expense of its operation, infringes no constitutional immunity. Such burdens are but normal incidents to the organization within the same territory of two governments, each possessed of the taxing power.

It should be kept in mind that the proposal before us provides only for nondiscriminatory taxation of the compensation of public employees and is reciprocal in nature. Thus, whatever burden might be passed on to one government because of the taxation of its employees' compensation by another governmental unit would, in a measure at least, be offset by the converse application of the proposal.

It is believed that the bill will afford to the Court a proper opportunity to redefine and clarify the limits to which governments may go in subjecting the compensation of public employees to taxation.

6. Some of the members of your committee believe that, even if these arguments are not convincing to the Court, the legislation might nevertheless be upheld under the plain language of the sixteenth amendment giving Congress the power to tax income "from whatever source derived." Language substantially identical to that phrase has been used in prior revenue acts. The Department of Justice study, page 152, points out:

> the same words in substantially identical phrasing were used in the Civil War income tax laws and in the Income Tax Act of 1894. In each instance they were used to include income from all sources. In the Civil War Acts the words included income from the so-called immune sources, as shown by the decision in *Collector* v. *Day*. These words, as used in the act of 1894, included interest from State and municipal bonds, as shown by the decision in the *Pollock case*. The words income from "all sources," used in the Corporate Excise Tax Act of 1909, embraced

**Attachment 5 - page 9 of 15**

**10**          PUBLIC SALARY TAX ACT OF 1939

interest from State and municipal bonds as shown by the decision in *Flint* v. *Stone Tracy Co.*

Some mention may also be made of the fact that Governor Hughes opposed the ratification of the sixteenth amendment, because this language gave the power to tax municipal securities.  Senators Borah and Root disputed this interpretation in the amendment, and considerable public attention was directed to this issue in the course of the ratification of the amendment.  Almost a quarter of the messages of the State Governors, recommending ratification or rejection of the sixteenth amendment, discussed the interpretation placed upon it by Governor Hughes.  Most of these Governors either agreed with the interpretation of Governor Hughes or stated that they were not sure whether Governor Hughes or Senator Borah was correct, but that the amendment should, nonetheless, be ratified.  From this evidence, it cannot be said that the country ratified the amendment without the knowledge of the Hughes interpretation.

It is true that the Supreme Court in several cases, notably in *Evans* v. *Gore*, 253 U. S. 245, has said that the sixteenth amendment did not extend the taxing power of the Congress, but merely removed the need for apportionment.  But in this case the reasoning was not necessary to reach the decision of the Court, and the scope of the sixteenth amendment was not contested by counsel for the Government.

This discussion of the scope of the sixteenth amendment, it may be repeated, is not necessarily the view of the full committee, but merely the views of some of its members.

In conclusion, your committee believes that whatever opinions may be held as to the constitutionality of this proposal, there are reasons for believing that the Supreme Court may uphold the legislation.  It is the law of the Supreme Court that its opinion upon the construction of the Constitution is always open to discussion and that its judicial authority depends altogether upon the force of the reasoning by which it is supported.  *The Passenger Cases*, 283 per Taney, C. J., at 473.  The Court has recently demonstrated that, to quote Mr. Justice Brandeis in his dissenting opinion in *Burnet* v. *Coronado Oil & Gas Co.* (1932), 285 U. S. 393 at 405, it "bows to the lessons of experience and the force of better reasoning, recognizing that the process of trial and error, so fruitful in the physical sciences is appropriate also in the judicial function."  It was in this dissenting opinion that Justice Brandeis listed 30 occasions upon which the Supreme Court had overruled earlier decisions.  In the recent case of *Helvering* v. *Mountain Producers Corporation* (1938), 303 U. S. 376, the view expressed by Justice Brandeis in his dissenting opinion in the *Coronado Oil and Gas Co. case* was adopted by the Supreme Court and that case, as well as the earlier case of *Gillespie* v. *Oklahoma*, 257 U. S. 501 (1921), were specifically overruled.

A description of the provisions of the bill in detail now follows:

TITLE I. PROSPECTIVE TAXATION OF PUBLIC EMPLOYEES

Section 1: Section 1 of the bill amends the definition of gross income so as to include in it salaries, wages, or compensation "for personal services as an officer or employee of the State, or any political subdivision thereof, or any agency or instrumentality of any one or more of

**Attachment 5 - page 10 of 15**

the foregoing." Under the amendment, the wages, salaries, and compensation of all officers and employees of the respective States and of their political subdivisions and agencies and instrumentalities, without exception, are to be included in gross income for taxable periods beginning after December 31, 1938. Whether or not the language of section 22 (a) as it exists in the present law is broad enough to include in gross income the compensation of such officers and employees is not believed by the committee to be an important issue. The committee believes that it is desirable to amend the statute to remove all doubts, so that any presentation of the constitutional question with respect to taxation of Government employees will not be fettered by any problem of statutory construction.

It is not to be inferred from this amendment, however, that those groups of State and local officers and employees from whom Federal income taxes have previously been collected were not subject to tax under the language of section 22 (a) in earlier revenue acts or in the Revenue Act of 1938.

The committee amendment to the section is purely technical. After the bill passed the House, the new Internal Revenue Code became law. It supersedes the 1938 Revenue Act for taxable years beginning in 1939 and thereafter. The committee amendment makes the necessary change so that the code rather than the 1938 act is amended.

The bill contains no express provision subjecting Federal officers and employees to Federal taxation for the reason that such a provision is unnecessary. The uniform construction of the definition of gross income in all revenue acts has been that they are subject to tax and their liability to Federal tax is established beyond question.

Section 2: Section 2 eliminates the exemption from Federal income tax of compensation of teachers in educational institutions employed by Alaska or Hawaii, or any political subdivision thereof. Since all teachers employed by the States will be subject to Federal income tax under section 1 of the bill, it is believed proper to eliminate the exemption referred to so that teachers in the Territories of Alaska and Hawaii will be subject to tax to the same extent as teachers in the various States. The committee amendment makes the change in law applicable to the new code rather than the 1938 act.

Section 3: In order to facilitate reciprocal taxation as between State and Federal Governments, your committee believes that the United States should expressly consent to the taxation of the compensation of its officers and employees. Section 3 of the bill therefore provides that the United States consents to the taxation of compensation received after December 31, 1938, for personal service as an officer or employee of the United States, any Territory or possession or political subdivision thereof, the District of Columbia, or any agency or instrumentality of any one or more of the foregoing, by any duly constituted taxing authority having jurisdiction to tax such compensation, if such taxation does not discriminate against such officer or employee because of the source of such compensation.

It will be noted that the consent extends to taxation not only by the State but also by other duly constituted taxing authorities, of the compensation of Federal officers and employees. Under this provision if any local governmental units have authority to and do impose income taxes, tax may be imposed upon such compensation subject to the jurisdiction of such units.

Attachment 5 - page 11 of 15

The consent is not intended to operate; nor could it operate, as a consent to any taxation to which as individuals these officers and employees are entitled to object either under the provisions of the Federal Constitution or of the constitutions or statutes of the respective States. For example, the consent has no effect upon the rights of an officer of the Federal Government to object that the imposition of a State tax upon him is invalid under the fourteenth amendment. Thus he may urge that a particular tax is invalid as to him because of an unreasonable classification, or the lack of geographical jurisdiction to tax, or for other reasons. Similarly, the consent has no effect upon the rights which such officers and employees possess as individuals under the various State constitutions and laws. To protect the Federal Government against the unlikely possibility of State and local taxation of compensation of Federal officers and employees which is aimed at, or threatens the efficient operation of, the Federal Government, the consent is expressly confined to taxation which does not discriminate against such officers or employees because of the source of their compensation. Inasmuch as section 1, relating to State and local officers and employees, applies only with respect to years beginning after December 31, 1938, section 3 consents to taxation of Federal officers and employees only with respect to compensation received after December 31, 1938.

### TITLE II. RETROACTIVE RELIEF TO CERTAIN STATE AND LOCAL OFFICERS AND EMPLOYEES

This title affords relief to employees of States of the Union and their local governments who have not been paying Federal income tax and in many cases have not even filed returns, but who may, under *Helvering* v. *Gerhardt*, be subject to Federal income tax for past years. However, there are certain groups of State and local employees, particularly those engaged in proprietary functions (such as the operation of State liquor stores, municipal power plants, etc.), who have for a number of years regularly paid Federal tax because their liability was fully established at an earlier date. It would be unfair and inequitable to relieve this group of employees from tax liability which was in no way a surprise to them and which they paid without question. It is therefore undesirable to relieve, in blanket fashion, all State and local officers and employees from liability for income tax in earlier years. Since the groups who should not be relieved have regularly paid their income tax and it has been currently assessed, while those who have been surprised by the *Gerhardt case* and who should be given relief have, in most cases, not paid their tax and have not been assessed, the general plan of title II is to provide that assessments previously made shall not be disturbed but that no new assessments shall be made.

Title II applies only to State and local officers and employees and not to other persons having dealings with State and local governments, since the taxability of the compensation of such other persons has long been recognized. Such persons are generally held to be independent contractors for purposes of Federal income taxation. Their liability for such tax has been clearly established since the case of *Metcalf & Eddy* v. *Mitchell* (1926) 269 U. S. 514, and they are not officers and employees within the meaning of this bill.

**Attachment 5 - page 12 of 15**

Section 201: Section 201 applies to Federal income tax (including interest, additions to tax, and additional amounts), for taxable years beginning prior to January 1, 1938, attributable to compensation for personal service as an officer or employee of a State or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing.

Subsection (a) provides that income tax attributable to the compensation of such officers and employees for years beginning prior to January 1, 1938, which was not assessed prior to January 1, 1939, shall not be assessed and no proceeding in court for the collection thereof shall be begun or prosecuted.

Subsection (b) provides that if any such income tax for such years is assessed after December 31, 1938, the assessment shall be abated and any amount collected in pursuance thereof shall be credited or refunded in the same manner as in the case of an income tax erroneously collected.   This provision thus authorizes the refund of any tax assessed against State and local officers and employees for any taxable year beginning prior to January 1, 1938, if assessment is made after 1938.

In a relatively small number of cases State and local officers and employees who are in all respects analagous to the groups given relief under section 201 (a) and (b) have paid their tax but have contested their liability by way of claim for refund rather than by contesting a deficiency asserted against them.   It would be inequitable to deny relief to these people who have paid their taxes and at the same time grant relief to similarly situated persons who have not paid their taxes. Section 201 (c) therefore provides for credit or refund to such persons of income tax, for any taxable year beginning prior to January 1, 1938, attributable to compensation received as a State or local officer or employee, if the tax has been collected on or before the date of enactment of the bill, in the following cases:

(1) where a claim for refund of such amount was filed before January 19, 1939 (the date of the President's message), and was not disallowed on or before the date of the enactment of this bill;

(2) where such claim was so filed but has been disallowed and the time for beginning suit with respect thereto has not expired on the date of the enactment of this bill;

(3) where a suit for the recovery of such amount is pending on the date of the enactment of this bill; and

(4) where a petition to the Board of Tax Appeals has been filed with respect to such amount and the Board's decision has not become final before the date of the enactment of this bill.

It is believed that the foregoing cases include virtually all State and local officers and employees who are entitled to relief from liability and who have paid their tax.   In general, subsection (c) does not include those State and local officers and employees who are not entitled to relief, such as those engaged in proprietary functions, because, their liability having been previously clearly established, they have not filed claims for refund or otherwise asserted their rights in any of the ways described in this subsection.

Section 202: As has been stated, section 201 applies only with respect to income tax for taxable years beginning prior to January 1, 1938.   Your committee believes, however, that it is fair and equi--

**Attachment 5 - page 13 of 15**

**14**          PUBLIC SALARY TAX ACT OF 1939

table to relieve State and local officers and employees in thetgroups
which are entitled to relief from income-tax liability for taxable years
commencing during 1938.   Section 202 accomplishes this result with-
out at the same time relieving from liability the groups of State and
local officers and employees, such as those engaged in proprietary
functions, whose liability for Federal income tax was long previously
established.   It provides that a State or local officer or employee who
did not include his compensation received as such in his return for a
taxable year beginning during 1937, shall not include in gross income
for a taxable year beginning in 1938 compensation received as such
an officer or employee.   Obviously, if an individual did not file a
return he did not include his compensation in his return.   Under this
provision a person who, for the first time, becomes during 1938 an
officer or employee of a State or political subdivision or agency or
instrumentality thereof will be exempt from income tax for his tax-
able year beginning in 1938 with respect to his compensation received
as such.   This section also provides that although a State or local
officer or employee included his compensation in gross income for a
taxable year beginning during 1937, he shall be exempt from tax for
the taxable year beginning during 1938, if he is entitled under sec-
tion 201 to obtain credit or refund of the tax paid for the taxable year
beginning during 1937.

Section 203: Sections 201 and 202 afford relief to virtually all State
and local officers and employees equitably entitled thereto for taxable
years beginning prior to 1939.   It is possible, however, that there
may be a few cases, not ascertainable at this time, which are not
covered by these sections.   For example, a public-school teacher may
have paid tax on his compensation for the taxable year 1937 and,
although intending to contest his liability therefor, had not filed claim
for refund before January 19, 1939 (and therefore is not given relief
by section 201).   Since those public employees who did not pay tax
are relieved from liability by sections 201 and 202, similar relief should
be granted in the case of the teacher who paid his tax.   Likewise, an
employee of the Port of New York Authority who paid tax with
respect to his compensation, but who had not filed claim for refund
before January 19, 1939, should be given relief.   Section 203, there-
fore, authorizes the Commissioner, under regulations prescribed by
him with the approval of the Secretary, to grant relief by way of
credit or refund.   Such credit or refund under this section is to be
made only if the State or local officer or employee files a claim therefor
after January 18, 1939, and the Commissioner finds that disallowance
of the claim would result in the application of the doctrines in the case
of *Helvering* v. *Gerhardt* extending the classes of officers and employees
subject to Federal taxation.   It should be noted that included in the
classes of employees to whom the Commissioner may give relief under
this section will be employees of the type involved in the case of
*Helvering* v. *Therrell*, 303 U. S. 218, since the decision in the *Gerhardt
case* clarified and restated the basis for the liability for such persons
for Federal income tax.   Such relief may be granted by the Com-
missioner with respect to claims for refund for a taxable year beginning
during 1938 as well as all taxable years prior thereto, subject to the
qualification of section 204.

Section 204: Section 204 provides that the claims for refund, suits,
or petitions to the Board referred to in the preceding sections are
subject to the statute of limitations properly applicable thereto.

**Attachment 5 - page 14 of 15**

Section 205: This section provides that "compensation" as used in sections 201, 202, and 203 shall not include compensation to the extent that it is paid directly or indirectly by the United States or any agency or instrumentality thereof. The effect of this definition is to grant relief not only in the ordinary case in which the compensation of the officer or employee is paid in the form of a salary but also in cases where compensation is derived from fees. In a number of States, State and local officers receive their compensation in the form of charges and fees which are collected from litigants, banks, and others with respect to whom the officer exercises a State function such as that of a master in chancery or a liquidator of a bank or insurance company. They are just as truly State and local officers as if they were paid a salary and the relief is therefore made applicable to them.

Section 206: This section provides that the terms used in the bill shall have the same meaning as when used in title I of the Revenue Act of 1938. The committee amendment to the section makes the meaning of terms used in the Internal Revenue Code applicable.

Section 207: This section provides for the separability of the titles of the bill.

O

**Attachment 5 - page 15 of 15**