**"District Court of the United States"**
**District of Minnesota**

RECEIVED

MAR 04 2019

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *Versus* | ) | |
| | ) | **Case No. 16-cv-02547 (SNR/LIB)** |
| **William J. Mooney**, *in propria persona*; | ) | |
| **And, Joni T. Mooney**, *in propria persona*; | ) | |
| **And, Harbor Holding, Mid-Atlantic** | ) | |
| **Trustees and Administrators.** | ) | |
| | ) | |
| *Defendants,* | ) | |

**Second:  Opposition and Demand on Dockets 171 and 172 Memorandum of Law.**

## Table of Contents

I.  General Background Information................................................................................1

II.  There Has Been NO "Actual Notice " of a "Notice of Deficiency" Which is Required Before
any Assessment and Collection Can Proceed. ..........................................................1

   A.   No  "Actual Notice"   of a "Notice of Deficiency" as Mandated by the IRC Before
   Assessment and Before Collection. .........................................................................3

      a.  Lawyers LIE with Impunity...............................................................................3

      b.  Actual Notice  of Deficiency and What is an Actual Notice. .............................4

      c.  Actual Notice Means "Awareness of sufficient facts to State a Claim;" and, "receipt of
      Notice"; and, Actual Notice means that a person actually knows or could discover by
      making a reasonable investigation; and, "Express information of a fact;" and "Actual Notice
      is a question of fact." ..........................................................................................8

   B.  NO Actual Notice the Mooneys that the IRC ONLY has Application to "citizens of the
   United States." ....................................................................................................12

III. The "STATE OF MINNESOTA" Is NOT the Government of Minnesota, One of the several
States; and, is Using the "National Voter Registration Act of 1993" for "Federal Offices" Only

SCANNED

MAR 05 2019

U.S. DISTRICT COURT MPLS

for Elections; Therein, There are no Constitutional Courts of Minnesota Exercising the "judicial Power of Minnesota"—"there is an absence of available State corrective process;" and, "circumstances exist that render such process ineffective to protect the rights of the applicant."13

A.  The "STATE OF MINNESOTA" Elections are Limited to Only "citizens of the United States" that Have No Right of the Elective Franchise or the Right of Suffrage PRECLUDING the "citizens of Minnesota" from Exercising Right of the Elective Franchise and the Right of Suffrage. ..................................................................................................................15

B.  There are No Public Officers of the State of Minnesota as there are No Elections for Public Officers of the State of Minnesota by the Qualified Electors, being the "citizens of Minnesota."..............................................................................................................18

  a.  Where is the Source of the Right and Privilege of the Elective Franchise and the Right of Suffrage?.............................................................................................................20

  b.  The Fourteenth Amendment Doesn't Apply To "citizens of the United States" in the District of Columbia or to the District of Columbia.............................................21

  c.  The Fifteenth Amendment Does not Confer any Right of Suffrage on Anyone, *i.e.*, "citizens of the United States."...........................................................................22

C.  The Tenth Amendment Provides NO Protections to the several States or to the People of the several States Against the Statutory "citizens of the United States". ...................22

IV.  The "citizens of the United States" is Exactly the same as the "citizens of the United States" in the Definition of the NVRA Codified at 52 U.S.C. § 20502—Definitions "(4) the term "State" means a State of the United States and the District of Columbia" in the SOM and the District of Columbia—No Discrimination Is Allowed by Congress for the Same very same "Class," being "citizens of the United States...........................................................................................................26

V.  Conclusion........................................................................................................................28

VI.  Verified Affidavit of William Joseph Mooney ....................................................................30

VII.  Verified Affidavit of Joni Therese Mooney........................................................................33

VIII.  Certificate of Service.......................................................................................................36

## I.  General Background Information

Comes now William Joseph Mooney and Joni Therese Mooney ("Mooneys") with limited and special appearance  with the **Second: Opposition and Demand on Dockets 170, 171 and 172 ("Opposition") in "the Court" ("District Court of the United States") arising under Article III Sections 1 and 2 of the Constitution of the United States exercising the judicial Power of the United States) and not *"this Court"* being the "United States District Court,"** *i.e.* **("USDC"))** that is operating under the codified 28 U.S.C. § 132 exercising the "judicial power of the district court . . . may be exercised by a single judge," being the definition of a "inquisitor" operating the **USDC, established according the "accepted practice" from the "Territory of Hawaii" court of which the USDC and the Chief Inquisitor (Susan Richard Nelson) have "actual Notice,"** *infra.,* **thereof evidenced in Docket 167 and in Attachment 3.  The USDC is merely the Star Chamber using the "cruel trilemma" of merry ole England with some new twists and obfuscations.**

## II.  There Has Been NO "Actual Notice " of a "Notice of Deficiency" Which is Required Before any Assessment and Collection Can Proceed.

Again the Chief Inquisitor proceeds hell bent with her Star Chamber "cruel trilemma" tactics of totally ignoring the Internal Revenue Code ("IRC") that in the Chief Inquisitor's CON is going to implement and force down the Mooney's throat.

In *United States v. Baggot*, 463 U.S. 476, 483 (1983), to wit:

The IRS's decision is largely self-executing, in the sense that **it has independent legal force of its own, without requiring** prior validation or enforcement by a court. The IRS need never go into court to assess and collect the amount owed**: it is empowered to collect the tax by non-**

**judicial means (such as levy on property or salary, 26 U.S.C. §§ 6331, 6332), without having to prove to a court the validity of the underlying tax liability.** Of course, the matter may end up in court if Baggot chooses to take it there, but that possibility does not negate the fact that the primary use to which the IRS proposes to put the materials it seeks is an extra*judicial* one-**the assessment of a tax deficiency by the IRS**.

The Chief Inquisitor's CON world existed As evidenced by **Attachment 1— Volume 92 Pt. 2 Congressional Record Excerpt Senate March 12, Pgs. 2148-2149, 2155; and, the Congressional Record excerpt of the House May 24, Page 5656 for the Administrative Act of 1946 ("Attach 1—Cong.Rec. 1946:").** to wit:

Mr. McCarran. MR. President, it has been said that the law is a jealous mistress. I regret exceedingly that I cannot have before me at this moment every Member of the Senate of the United States so that each might listen to the explanation of a bill *which to my mind and to the mind of the bar of America is one of the most important measures that has been presented to the Congress of the United States in its history.*

*We have set up a fourth order in the tripartite plan of Government which was initiated by the founding fathers of our democracy. They set up the executive, the legislative, and the judicial branches*; but since that time *we have set up a fourth dimension,* if I may so term it, which is popularly known as administrative in nature. *So we have the legislative, the executive, the judicial, and the administrative.*

Perhaps there are reasons for that arrangement. We found that the legislative branch, although it *might enact law, could not very well administer it.* So the legislative branch *enunciate* the legal precepts and *ordained* that commissions or groups should be established by the executive branch with *power to promulgate rules and regulations. These rules and regulations are the very things that impinge upon, curb, or permit the citizen who is touched by the law,* as ever citizen of this democracy is.

The bill comes from the Committee on the Judiciary of the Senate of the United States, and I think it should be explained to every Member of the Senate, because the Committee on the Judiciary desires that there should be a full understanding of its provisions and purposes. The Committee on the Judiciary is the law committee of this body, and *the law is the thing which makes democracy vital. This is not a Government of men. It is a Government of law*; and this law is a thing which, every day from its enactment until the end of time so far as this Government is concerned, *will*

*touch every citizen of the Republic.*   So proceed with a detailed explanation of a bill which should be listened to by every Member of the Senate.

Mr. President, Calendar No. 758, Senate bill 7, the purpose of which is to improve the administrative of justice by **prescribing fair administrative procedure**, is a ***bill of rights*** for the hundreds of thousands of Americans whose affairs are controlled or regulated in one way or another by agencies of the Federal Government.  It is designed to provide guaranties of ***due process of administrative procedures***.
* * *
The subject of ***administrative law and procedure is not expressly mentioned in the Constitution***, and there is no recognizable body of law, as there is for the courts in the Judicial Code. *[Emphasis added]*

## A.  No "Actual Notice"  of a "Notice of Deficiency" as Mandated by the IRC Before Assessment and Before Collection.

The Chief Inquisitor in Docket 171 admits there isn't any "actual Notice" of "Notice of Deficiency" or existing "Notice of Deficiency" evidenced by the **Attachment 2—A True and Correct Copy of the Order of Dismissal and the Respondent's Motion for Dismissal signed by a "Shannon M. Harmon Attorney under the Chief Counsel" for the IRS in Tax Court ("Attach 2—Tax Court Dismissal")** and therein *flows a fortiori*, that the IRC and courts have held that Notice of Deficiency is mandated to precede any Assessment and Collection.  So where is the evidence of an "Deficiency," *i.e.* an actual Notice of a "Notice of Deficiency" and "Assessment?" **IT DOES NOT EXIST.**

### a.  Lawyers LIE with Impunity.

Amazingly Congress clothed that Lawyers enacted a Statute of the United States that grants government people and others to outright Lie with Impunity as codified in **18 U.S.C. § 1001(b),** to wit:

(a) Except as otherwise provided in this section, whoever, **in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--**

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

ll be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

(b) <u>**Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding**</u>.

See also *United States v. McNeil*, 362 F.3d 570 (9th Cir. 2004); and, *United States v. Horvath*, 492 F.3d 1075 (9th Cir. 2007).

**So where is Pahl's Affidavit of the Notice of Deficiency and Assessment? The evidence is overwhelming of the LIES by Pahl also by Minor and Chief Inquisitors knowingly and willingly.**

### b.  Actual Notice  of Deficiency and What is an Actual Notice.

The IRC has requirements of an "actual notice" being "**no assessment of a deficiency ... shall be made ... until such notice [of deficiency] has been mailed to the taxpayer....**" **I.R.C. § 6213(a)."** There are further jurisdictional requirements in *Holof v. C.I.R.*, 872 F.2d 50, 52, 53-54 (3rd Cir. 1989) Footnotes **FN5, FN6, FN7, FN8** and **FN9,**

*infra,* of which NONE have been disclosed to The Mooneys; and further, The

Mooneys has had NO "actual notice" thereof from the IRS.

> In *Robinson v. United States*, 920 F.2d 1157, 1158 (3ʳᵈ Cir. 1990), to wit:
> The **notice of deficiency**, sometimes called a "**ninety day**" letter, is the taxpayers' "ticket to the Tax Court" to litigate the **merits of the deficiency determination**, *Delman v. Commissioner,* 384 F.2d 929, 934 (3d Cir.1967), *cert. denied,* 390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1144 (1968), and is a **jurisdictional prerequisite to a suit in that forum.** *Laing v. United States,* 423 U.S. 161, 165 n. 4, 96 S.Ct. 473, 477 n. 4, 46 L.Ed.2d 416 (1976). **Until ninety days have passed, the IRS can neither make an assessment nor utilize Court procedures for collection.** *Holof v. Commissioner,* 872 F.2d 50, 53 (3d Cir.1989). If the taxpayers file in the Tax Court within that period, the restraint on the IRS continues until the decision of the Court becomes final. 26 U.S.C. § 6213(a).
>
> 2. If the taxpayers do not file a petition in the Tax Court within the specified time, **the IRS makes an assessment. 26 U.S.C. § 6213(c).** A duly designated official for the district or regional tax center signs the summary record of the assessment, which identifies the taxpayers, **the type of tax owed, the taxable period and the amount of the assessment. 26 U.S.C. § 6203**; Treas. Reg. § 301.6203–1.
>
> 3. As soon as practicable and within **sixty days** after making the assessment, the IRS must issue a **"notice and demand letter"** to the taxpayers, specifying the **amount due and demanding payment. 26 U.S.C. § 6303.**
>
> 4. If the taxpayers do not pay after demand, the IRS may file a lien against their property. **26 U.S.C. § 6321.** *See generally* Wilkens & Matthews, *A Survey of Federal Tax Collection Procedure: Rights and Remedies of Taxpayers and the Internal Revenue Service,* 3 Alaska L.Rev. 269 (1986).
>
> **The first of these procedures—the provision requiring the IRS to issue a notice of deficiency—is the focal point of this case.**
>
> 2The **notice** is a **"pivotal feature of the Code's assessment procedures,"** *Holof,* 872 F.2d at 53, because it serves as a **prerequisite to a valid assessment by the IRS.** The Internal Revenue Code is clear that **"no assessment of a deficiency ... and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice [of deficiency] has been mailed to the taxpayer, nor until the expiration of such 90–day ... period." 26 U.S.C. § 6213(a).** By providing an opportunity

to litigate the merits of the deficiency in the Tax Court without requiring payment of the full amount allegedly owed, the statute provides substantial benefits to taxpayers.

See *Murray v. C.I.R.*, 24 F.3d 901, 903 (7th Cir. 1994).

*Holof v. C.I.R.*, 872 F.2d 50, 52, 53-54 (3rd Cir. 1989), to wit:

[51] **We review decisions of the Tax Court in the same manner and to the same extent as decisions of the district court in civil actions tried without a jury. 26 U.S.C. § 7482(a)** (1983). Although the Supreme Court has expressly held that a consent to extend the period for assessment of income tax is **"not a contract ... [but is] essentially a unilateral waiver of a defense by the taxpayer,"** *see Stange v. United States,* 282 U.S. 270, 276, 51 S.Ct. 145, 147, 75 L.Ed. 335 (1931) (citing *Florsheim Bros. Drygoods Co. v. United States,* 280 U.S. 453, 466, 50 S.Ct. 215, 219, 74 L.Ed. 542 (1930)), some courts have analyzed taxpayer consents to waive the statute of limitations defense in contractual terms, *see, e.g., Roszkos,* 850 F.2d at 516; *Pursell v. Commissioner,* 38 T.C. 263, 278 *aff'd,* 315 F.2d 629 (3d Cir.1963) (per curiam).

* * *

[53-54] **The notice of deficiency is a pivotal feature of the Code's assessment procedures. Unless the IRS first issues the taxpayer an effective notice of deficiency, the Commissioner is precluded by statute from assessing or collecting any taxes. FN5.** Once the Commissioner issues a notice of deficiency, the taxpayer has ninety days from the mailing of the notice to file a petition with the Tax Court for a redetermination of the deficiency. **FN6.** During this same ninety-day period, the Commissioner is prohibited from assessing or collecting the deficiency. **FN7.** If the taxpayer files a petition with the Tax Court before the ninety-day period expires, the prohibition on assessment continues until the decision of the Tax Court becomes final. **FN8.** This same notice of deficiency suspends the running of the statute of limitations during this period in which the Commissioner is precluded under § 6213 from making the assessment. **FN9.** The statute remains suspended for the sixty days after the prohibition on assessment is lifted. **FN10,** *ibid,* **FN9.**

> **FN5.** The Code provides, **"no assessment of a deficiency ... shall be made ... until such notice [of deficiency] has been mailed to the taxpayer...." I.R.C. § 6213(a).**
>
> **FN6.** The Code provides, **"Within 90 days ... <u>after the notice of deficiency authorized</u>** by section 6212 is mailed ... the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency." I.R.C. § 6213(a).**

FN7.  The Code provides, "**no assessment of a deficiency ... shall be made ... until the expiration of such 90-day period....**" I.R.C. § 6213(a).

FN8.  The Code provides, "**no assessment of a deficiency ... shall be made ...**, if a petition has been filed with the Tax Court, until the decision of the Tax court has become final." I.R.C. § 6213(a).

FN9.  The Code provides, "The running of the period of limitations provided in section 6212 ... shall (**after the mailing of a [deficiency]** notice ...) be suspended for the period during which the **Secretary is prohibited from making the assessment ... and for sixty days thereafter.**" I.R.C. § 6503(a)(1) (West Supp.1988).

In *Bachner v. C.I.R.*, 81 F.3d 1274, 1277 (3rd Cir. 1996), to wit:

**Decisions of the Tax Court are reviewed in the same manner as district court decisions in non-jury civil actions.** See *Holof v. Commissioner*, 872 F.2d 50, 52 (3rd Cir. 1989). 26 U.S.c. § 7482(a)(1). The issues on **appeal** involve only **questions of statutory construction and application**, and therefore we conduct de novo review. *See Armstrong World Indus., Inc. v. Commissioner*, 974 F.2d 422, 430 (3d Cir.1992).

In *International Engine Parts, Inc. v. Feddersen & Co.*, 888 P.2d 1279, 1282

(Sup.Ct.Ca. 1995), to wit:

**1. IRS Deficiency Assessment Procedures**
In order to better understand why the limitations period necessarily commences no earlier than the date of deficiency assessment in cases involving the negligent filing of tax returns, **it is helpful to review IRS procedures for examination of tax returns and assessment of tax deficiencies.**
Once a federal tax return is selected for audit, the examination is performed by an IRS examiner. At the conclusion of the examination, the taxpayer is sent a report of the examiner's findings, indicating any proposed deficiency assessments. **If the taxpayer agrees with the findings of the examiner, he or she will sign the appropriate forms (form 4549 and/or form 870) acknowledging the tax liability**. (*Holland v. Commissioner of Internal Revenue* (4th Cir.1980) 622 F.2d 95, 96.) **If the taxpayer signs the agreement form, he or she immediately (1) waives the required statutory notice of deficiency pursuant to Internal Revenue Code section 6212 (the 90–day letter), (2) waives the corresponding prohibition on collection for 90 days under Internal Revenue Code section 6213, and (3) is thereafter precluded from litigating the proposed deficiency in**

tax court. (Int.Rev.Code, §§ 6212, 6213; *Mills v. Garlow* (Wyo.1989) 768 P.2d 554, 556 (hereafter *Mills* ); see also *Robinson v. United States* (3rd Cir.1990) 920 F.2d 1157, 1158 [**explaining that notice is pivotal in IRS assessment procedures because it serves as prerequisite to valid tax assessment**].) If the **taxpayer does not agree** with the examiner's proposed findings, the findings will be reviewed in the district office, and the taxpayer **will be sent a "30–day letter"** instructing that the taxpayer has 30 days to file a protest. (*Mills, supra,* 768 P.2d at p. 557.) "If the taxpayer fails to respond within the thirty days, **a notice of deficiency will be issued.** [Citation.] If the taxpayer timely files a protest, he [or she] will be accorded an **appeals office** conference.... If a settlement is reached, the taxpayer will again be requested to sign the agreement form.... A determination by the appeals office, however, is **final insofar as the taxpayer's appeal rights within the IRS [are concerned],** and if the taxpayer continues to disagree, the **statutory notice of deficiency** will be sent giving the taxpayer ninety days to file a petition in the Tax Court before collection actions are begun." (*Ibid.*)

Thus, the **preliminary findings of the tax examiner** are ***proposed* findings** that are subject to negotiation prior to any determination of tax deficiency. (*Mills, supra,* 768 P.2d at p. 557.) **Once a deficiency is assessed**, however, **either by the taxpayer's consent to deficiency assessment, or by receipt of a final deficiency notice** pursuant to Internal Revenue Code section 6212 et seq., the **matter is final as to the IRS** and subject to legal appeal in federal tax court. (*Ibid.*)

**c. Actual Notice Means "Awareness of sufficient facts to State a Claim;" and, "receipt of Notice"; and, Actual Notice means that a person actually knows or could discover by making a reasonable investigation; and, "Express information of a fact;" and "Actual Notice is a question of fact."**

The Mooneys have not had any "actual Notice" of any Notice of Deficiency or Assessment by the IRS therein *flows a fortiori* that The Mooneys has no means available to even comply with alleged requirement or to research out an actual obligation to file an **Attach 9—Form 1040** and/or an **Attach 11—M1 Form.**

In *Prouty v. Devin*, 50 P. 380, 381 (Sup.Ct.Ca. 1897) "**Notice is actual or constructive. Actual notice is that which consists in express information of a fact,**

and **constructive notice is that which is imputed by law.**" In *Ferraro v. Humphrey*,

242 F.Supp.3d 732, 739 (N.D.Ind. 2017) "Actual Notice means notice sufficient to permit

the insurer to locate the suit and defend it (cites omitted). In *McCarthy v. Lane*, 16 N.E.

683, 685 (Sup.Jud.Ct.Mass. 1938) "Actual Notice is a question of fact." See also *Mara v.*

*Pierce*, 9 Gray 306, 307 (Sup.Jud.Ct.Mass. 1857). In *Petition of Alchemedes/Brookwood,*

*Ltd. Partnership*, 546 N.W.2d 41, 42 (**Ct.App.Minn.** 1996) "Actual notice means actual

knowledge.   See *Comstock & Davis Inc. v. G.D.S. & Assocs*, 481 N.W.2d 82, 85

(Minn.App. 1992 (actual notice requires knowledge of enforceable agreement.).   In

*Comstock & Davis, Inc. v. G.D.S. & Assoc.*, 481 N.W.2d 82, 85 (**Ct.App.Minn**. 1992), to

wit:

> **Constructive notice is a creature of statute** and, as a **matter of law**,
> imputes notice to all purchasers of any properly recorded instrument even
> though the purchaser has no **actual notice** of the record." * * *
>
> **Implied notice** occurs where one has "***actual knowledge*** of facts which
> would put one on further inquiry." *Id.* (emphasis in original). **Inquiry**
> **notice** is thus distinguished from **actual notice**, which requires conveying
> knowledge of a signed, enforceable agreement. *See Levine v. Bradley Real*
> *Estate Trust,* 457 N.W.2d 237, 240 (Minn.App.1990) (no **actual notice** of
> easement based merely upon telephone conversation that gives notice a
> document concerning parking privileges *might* be signed), *pet. for rev.*
> *denied* (Minn. Aug. 7, 1990).

In *United States v. Real located at 7215 Longboat Drive (Lot 24)*, 750 F.3d 968,

974 (8th Cir. 2014) "The Supreme Court concluded in *Dusenbery v. United States*, 534

U.S. 161, 169 n.5 (2002), that in general "actual notice" means "receipt of notice." See

also *United States v. Pulg*, 419 F.3d 700, 706 (8th Cir. 2005) As the Supreme Court

explained  in *Dusenbery   v.   United   States*,   534   U.S.   161,   169   n.5   (2002)

"**actual notice**" **means** the same thing as "receipt of notice." Due process does not require the government to provide interested parties with "actual notice," but requires that the government "***attempt to provide* actual notice**" by means reasonably calculated to inform the absent party. *Id.* at 169–70, 122 S.Ct. 694."

In *SD3 II LLC v. Black & Decker (U.S.) Incorporated*, 888 F.3d 98, 108-109, 112 115-116 (4th Cir. 2018), to wit:

> **Actual notice** is a straightforward concept to which we have long applied the standard that the plaintiff knew the " '**fraudulently concealed facts, which are the basis of a claim.**' " *Go Comput.*, 508 F.3d at 178 (quoting *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987) ); *accord Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (holding that to prove fraudulent concealment the plaintiff must demonstrate that the defendant "**fraudulently concealed *facts that are the basis of the plaintiff's claim***" (emphasis added) ). Thus, a plaintiff is on **actual notice** if it has "**sufficient facts to identify a particular cause of action.**" *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). **Mere "hints, suspicions, hunches or rumors"** are not enough to put a plaintiff on **actual notice**. *Hobson*, 737 F.2d at 35. Instead, the plaintiff must be able to plead the factual allegations necessary to withstand a motion to dismiss, including "both the injury that g[ave] rise to [its] claim and the injurer." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010).
>
> * * *
>
> [112] **Actual notice**" means notice of **sufficient facts**, "which are the **basis of a claim**," *Go Comput.*, 508 F.3d at 178, including identification of the injury, the injurer, and the type of injury
>
> * * *
>
> [155-166] For more than 40 years, this Court has been unwavering in our articulation of what **actual notice** requires: **awareness of sufficient facts to state a claim.** *See Go Comput., Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) (explaining that antitrust plaintiff may not invoke fraudulent concealment if he has discovered "**facts which are the basis of a claim**"); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) ("**facts that are the basis of the**

plaintiff's claim"); *116 *Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211, 218 (4th Cir. 1987) ("**facts which are the basis of a claim**"); *Charlotte Telecasters, Inc. v. Jefferson–Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976) ("**facts which are the basis of his cause of action**").

It is axiomatic that the "facts which are the basis of a claim" or "cause of action" are those which enable a party to bring a valid suit. *See* Cause of Action, *Black's Law Dictionary* (10th ed. 2014) ("A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to *obtain a remedy in court from another person.*" (emphasis added) ). Thus, as the majority opinion correctly explains, for a plaintiff to be on **actual notice**, it "**must be able to plead the factual allegations necessary to withstand a motion to dismiss.**" *Ante* at 109.

This rule is consistent with the approach taken by our sister circuits. *See, e.g.*, *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010) ("A defendant who prevents a plaintiff from obtaining information that he needs *in order to be able to file a complaint that will withstand dismissal* is forbidden ... to plead the statute of limitations for the period in which the inquiry was thwarted." (emphasis added) ); *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 504 (9th Cir. 1988) (**holding that actual notice** requires "**knowledge [that] would ... justify the filing of a complaint**"); *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984) (holding that **actual notice** requires "**awareness of sufficient facts to identify a particular cause of action**" and "**to file suit**"), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

And this long-standing and widely embraced rule—that a plaintiff is on **actual notice** *only* **when it is aware of sufficient facts to state a claim that withstands a motion to dismiss**—balances the interests served by the fraudulent concealment doctrine: obliging plaintiffs to file suit in a timely fashion once they are aware, or should be aware, of facts sufficient to state a claim that can withstand a motion to dismiss, while preventing wrongdoers from avoiding liability by concealing their wrongdoing. *See Marlinton*, 71 F.3d at 122 ("The purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from concealing a fraud, or ... committing a fraud in a manner that concealed itself until the defendant could plead the statute of limitations to protect it." (internal quotation marks omitted) ). To that end, any rule that would treat a plaintiff as being on **actual notice** under a standard more favorable to defendants—in situations when the plaintiff lacks knowledges of sufficient facts to state a

claim that would withstand dismissal—would wrongly "creat[e] the anomalous situation of *requiring persons to file suit on a hunch*, only to be dismissed for failure to state a claim." *Hobson*, 737 F.2d at 39 (emphasis added). As the majority opinion correctly states, "[m]ere 'hints, suspicions, hunches or rumors' are not enough to put a plaintiff on **actual notice**." *Ante* at 109 (quoting *Hobson*, 737 F.2d at 35). Accordingly, a plaintiff is on **actual notice** when it knows of "enough factual information from which [it] could plead [its] cause of action for Rule 12(b)(6) purposes." *Id.* at 112.

## B.  NO Actual Notice the Mooneys that the IRC ONLY has Application to "citizens of the United States."

As the Mooneys have given "actual Notice" to Pahl and the minor and Chief Inquisitors they are both "citizens of Minnesota" domiciled in Minnesota, being one of the several States as evidenced by the public records **Certified Copy** of "**Certificate of Political Status, Citizen Status and Allegiance**" of **William Joseph Mooney** which is a certified copy of the Public Record filed into the **Office of County Recorder, Morrison County, Minnesota, Doc. #556420, being Recorded on June 11th, 2018 that filed into the "District Court of the United States"** in Docket 155; and, concerning Joni Therese Mooney, which is a certified copy of the Public Record filed into the **Office of County Recorder, Morrison County, Minnesota, Doc. #556419, being Recorded on June 11th, 2018 that filed into the "District Court of the United States"** in Docket 156.

Pahl and Minor and Chief Inquisitors have knowingly and intentionally withheld from the Mooneys that the IRS ONLY has application to "citizens of the United States" where now Congress has taken the unconstitutional Liberty of reversing the citizen Status as Pronounced in the Case of *Colgate v. Harvey*,m 296 U.S. 404, 427-428 (1935), to wit:

> Thus, the dual character of our citizenship is made plainly apparent. That is to say, a citizen of the United States is ipso facto and at the same time a citizen of

the state in which he resides. **And while the Fourteenth Amendment does not create a national citizenship, it has the effect of making that citizenship 'paramount and dominant' instead of 'derivative and dependent' upon state citizenship.** FN3 'In reviewing the subject,' Chief Justice White said, in the *Selective Draft Law Cases*, 245 U.S. 366, 377, 388, 389, 38 S.Ct. 159, 165, 62 L.Ed. 349, L.R.A. 1918C, 361, Ann.Cas. 1918B, 856: 'We have hitherto considered it as it has been argued from the point of view of the Constitution as it stood prior to the adoption of the Fourteenth Amendment. But to avoid all misapprehension we briefly direct attention to that (the fourteenth) amendment for the purpose of pointing out, as has been frequently done in the past, how completely it broadened the national scope of the government under the Constitution by causing citizenship of the United States to be paramount and dominant instead of being subordinate *428 and derivative, and therefore operating as it does upon all the powers conferred by the Constitution leaves no possible support for the contentions made if their want of merit was otherwise not to clearly .

FN3  In *United States v. Hall*, 26 F.Cas. 79 (Cir.Ct.N.D.Ala. 1871), page 79, 81, Judge Woods said: '<u>**By the original constitution citizenship in the United States was a consequence of citizenship in a state. By this clause this order of things is reversed; * * * and citizenship in a state is a result of citizenship in the United States.**</u>'

In *United States v. Hall*, 26 F.Cas. 79, 81 (Cir.Ct.S.D.Ala. 1971), to wit:

By the original constitution citizenship in the United States was a consequence of citizenship in a state. By this clause this order of things is reversed. Citizenship in the United States is defined; it is made independent of citizenship in a state, and citizenship in a state is a result of citizenship in the United States. So that a person born or naturalized in the United States, and subject to its jurisdiction, is, without reference to state constitutions or laws, entitled to all the privileges and immunities secured by the constitution of the United States to citizens thereof.

**III. The "STATE OF MINNESOTA" Is NOT the Government of Minnesota, One of the several States; and, is Using the "National Voter Registration Act of 1993" for "Federal Offices" Only for Elections; Therein, There are no Constitutional Courts of Minnesota Exercising the "judicial Power of Minnesota"—"there is an absence of available State corrective process;" and, "circumstances exist that render such process ineffective to protect the rights of the applicant."**

And further, the "STATE OF MINNESOTA" ("SOM") that is in conjunction with the

IRS wherein the IRS and the Chief Inquisitor operate to perpetuate the fraud against the

Mooneys that is not exercising jurisdiction of the "judicial Power of Minnesota," being one of

the several States of the Union of States within the Constitution of the United States, but this SOM is a **"State of the United States and the District of Columbia"**[1] as defined in the National Voter Registration Act of 1993 ("NVRA"), 107 Stat. 77-109 evidenced by **Attachment 3—National Voter Registration Act of 1993 ("Attach 3—NVRA Stat.")** currently codified in 52 U.S.C. §§ 20501-20511 of which the SOM uses exclusively only the NVRA for all elections.[2]

With this definition of 52 U.S.C. § 20502—Definitions "(4) the term "State" means a State of the United States and the District of Columbia" therein:  (1) "State of the United States;" and (2) District of Columbia where Congress has Plenary Power over the "citizens of the United States" is a *sine qua non* that Congress has plenary Power over the "citizens of the United States" in the **SOM that is a "State of the United States."  In reality a "State of the United State" is a municipal entity UNDER the "United States" being the current SOM;** and further,  **it is an unassailable fact that this SOM is not the constitutional government of Minnesota, being one the several States of the Union of States of the Constitution of the United States.**

The **Attach 3—NVRA Stat** limits the elections in the SOM to only a **"Federal Office,"** as held in *Pree v. District of Columbia Bd. of Elections & Ethics*, 645 A.2d. 603, 605 (Ct.App.D.C. 1994), to wit:

> [B}y its terms applies only to elections **"for Federal office,"** see, e.g., 42 U.S.C.A. § 1973gg–3, which is expressly defined (*id.*, § 1973gg–1(2)) by reference to 2 U.S.C. § 431(3) (1988) as meaning **"the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress.**

See also 185 A.L.R. Fed 155 (Originally published in 2003) *et. seq.*

The "Federal Office" is defined for the NVRA in 52 U.S.C. § 20502—Definitions (2)

---

[1] 52 U.S.C. § 20502—Definitions "(4) the term "State" means a State of the United States and the District of Columbia."

[2] M.S.A. § 201.071—Registration Applications.

"the term "Federal Office" has the meaning stated in sections [52 U.S.C. §] **30101(3)** of this title." Wherein, in 52 U.S.C. § 30101(3) "The term **"Federal office" means the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress;"** therein, as a matter of law[3] and the definition using "term" and "means" precludes all elections of any public Officer of the State of Minnesota, *i.e.,* as there are NO elections held for any public Officers of the State of Minnesota exercising the elective franchise or right of suffrage by the "citizens of Minnesota," with Minnesota being one of the several States.

**A. The "STATE OF MINNESOTA" Elections are Limited to Only "citizens of the United States" that Have No Right of the Elective Franchise or the Right of Suffrage PRECLUDING the "citizens of Minnesota" from Exercising Right of the Elective Franchise and the Right of Suffrage.**

The SOM NVRA elections are limited to only "citizens of the United States" as codified in M.S.A. § 201.071 "I certify that I: (1) will be at least 18 years old on elections day; (2) am a **citizen of the United State.**" As the SOM has is using the NVRA exclusively, it is an unassailable fact that only "citizens of the United States" can register to "vote"[4] as found in the **Attach 3—NVRA Stat.** codified currently in 52 U.S.C. § 20501(a) "Findings—The Congress finds that—(1) the right of citizens of the United States is a fundamental right;"[5] and further,

---

[3] The Supreme Court of the United States *held* in *Celotex Corporation v. Catrett*, 477 U.S. 317, 317-318, 322-323 if "[T]here is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Page 330 "Summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[4] M.S.A. § 201.071;

[5] The Fundamental rights of "citizens of the United States" is found in **1938 Cong. Rec.** pg. 437, January 13th, 1938.

these ""Rights of the Citizens of the United States Enumerated"[6] for "citizens of the United States" are enumerated in the **Attachment 4—Congressional Record of January 13th, 1938 including the "[Senate. Views of the minority, No. 1956. 49th Cong., 2d sess.] In the Senate of the United States. February 25, 1887. Ordered to be printed," ("Attach 4—1938 Cong. Rec.") pg. 437.** The fundamental rights of "citizens of the United States" is found in clearly articulates clearly the use of "citizen of the United States" is a **prohibition**; and, **not positive law or not original rights**, which had application only to prohibit the several States Laws and prohibit the public officers of the several States, that do not exist today because of the **Attach 5—NVRA Stat.** that is codified in 52 U.S.C. §§ 20501-20511, and the employees clothed with authority one of the several States with an **Attach 6—1938 Cong. Rec.,"** excerpt from **Page 10**, to wit:

**RIGHTS OF CITIZENS OF THE UNITED STATES ENUMERATED**
They are as follows:

The right to come to the seat of Government to assert any claim he may have upon that Government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions.

The right of free access to its seaports, through which all operations of foreign commerce are conducted; to the substreasuries, land offices, **and courts of justice in the several States.**

The right to demand the care and protection of the Federal Government over his life, liberty, and property when on the high seas or within the jurisdiction of a foreign Government.

The right to peacefully assemble and petition (Congress) for a redress of grievances, and to the writ of habeas corpus.

The right to use the navigable waters of the United States however they

---

[6] **1938 Cong. Rec.** pg. 439, January 13th, 1938.

may penetrate the territory of the several States.

The right to become a **citizen of a State** by residing In It. Then, proceeds the court,

"There are rights which pertain to a citizen in his **character of citizen of the United States**, and are therefore subject to Federal jurisdiction and power, which grow out of prohibitions in the Constitution of the United States on State action; of such is the right to be absolved from all the consequences of bills of attainder, ex post facto laws, and laws Impairing the obligation of contracts enacted by the States; and the **right secured against prohibited State actions, as expressed In the three new amendments to the Constitution."**

\* \* \*

**It is now firmly settled that these provisions are directed solely against State laws and State action, through persons or agents clothed with State authority. It is also settled that the <u>power conferred on Congress to enforce these provisions is a power only to enforce the prohibition against State action.</u> That the rights conferred on persons under them are not positive, original rights, but the right only to exemption from, and protection against, <u>the prohibited State action</u>. And the power of Congress to interfere in any case is purely a power of correction, a power to give redress against a prohibited State action, that the exercise, the actual exercise of efficient power by Congress, under the amendments, <u>presupposes State action of the kind prohibited; and until there be such prohibited State action, the power of Congress is wholly dormant, and without such action really being taken, somewhere or at some time, the power of Congress would sleep forever.</u>**

In no case under these amendments, so far as the present controversy is concerned, can the power of Congress be made to reach, either for punishment or correction, or redress in any way, civil or criminal, the acts of private individuals. On this last point, the controversy was long between a sectional majority in Congress and the Constitution, but in the end the Constitution triumphed fully, completely.

This was well settled as evidenced holdings of the Supreme Court of the United

States including *United States v. Cruikshank et al*, 92 U.S. 542, 554-555 (1875); and,

*United States v. Reese et al.*, 92 U.S. 214 (1875) that is cited in the **Attach 4—1938**

**Cong. Rec.,"** *supra.*

As the Power of correction is posited **only** in the Congress for corrections of State Law or State Actors in the Thirteenth, Fourteenth and Fifteenth Amendments evidenced in **Attach 4—1938 Cong. Rec.** *flows a fortiori* that the **SOM is has Zero Constitutional Authority have elections only for "citizens of the United States" and to be limiting the elections to a special class, being "citizens of the United States" that is posited only with Congress; and, precluding an elections for the "citizens of Minnesota" under the Attach 3—NVRA Stat.** that precludes any rights of the elective franchise or the right of suffrage in all elections.

**B.  There are No Public Officers of the State of Minnesota as there are No Elections for Public Officers of the State of Minnesota by the Qualified Electors, being the "citizens of Minnesota."**

In the adjudged decision of *State v. Hawkins*, 257 P. 411, 413-418 (Sup. Ct. Mont. 1927) is an exhaustive examination of the essential elements to be a "public Officer" of a civil nature in any of the several States and the requirements pertaining to the creation of an "Office" in any of the several States based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, and this holding is ibid at 418, to wit:

> After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it **a public office of a civil nature:** (1) It **must be created by the Constitution or by the Legislature** or created by a municipality or other body through authority conferred by the Legislature; (2) it **must possess a delegation of a portion of the sovereign power of government,** to be exercised for the benefit of the public; (3) **the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority;** (4) **the duties must be performed independently and without control of a superior power, other than the law,** unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it **must have some permanency and continuity,** and not be only temporary or occasional. In addition, in this state, **an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority.** *[Emphasis added]*

The Court may not presume the existence that any of the Defendants or Parties to this instant Case are in fact either judicial Officers of the several States or executive Officers of the several States, *ibid* at 414, "... **we may not presume he is an officer; it must be shown.**  \* \* \* It must appear in the record" (citations omitted).

Another extensively researched case on "public Officer" and the requirement of the creation of an "Office" is *State v. Cole*, 148 P. 551, 552 *et seq.* (Sup. Ct. Nev. 1915) which is based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, held *ibid* at 552 an Office can't spring into existence, but must be created, to wit:

> **An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the Constitution, by legislative enactment, or by some municipal body, pursuant to authority delegated to it.** "All public offices must originally have been created by the sovereign as the foundation of government."

In the adjudged decision in *Hawkins, supra.* at 415 citing the holding of *State v. Spaulding*, 72 N.W. 288, 291 (Sup. Ct. Iowa 1897), the distinction of a "position", i.e. mere employee is explicated from an [public] officer, to wit:

> "A **position**, the **duties** of which \* \* \* **can be changed at the will of the superior,** \* \* \* is not an office, but a mere employment, and the incumbent is not an officer, but a **mere employee**." *[Emphasis added]*

And further, in the adjudged decision of *Hawkins, supra.*, at 417 explicating  when a "position" is created not by force of law, but by a contract of employment, it isn't an "office", "When a position is created, not by force of law but by contract of employment, the employment does not rise to the dignity of an office."

A "public Officer" as distinguished from an "employee" must be invested by law with a portion of the state's sovereignty for the public benefit largely independent of the control of

others and authorized to exercise functions either of executive, legislative, or judicial character. See *State Ex rel. Newman v. Skinner*, 191 N.E. 127, 128 (Sup. Ct. Ohio 1934); *City of Groves v. Ponder*, 303 S.W. 485, 488 (Tex. Civ. App. 1957); *State ex rel. Milburn v. Pethtel*, 90 N.E.2d 686, 689 (Sup. Ct. Ohio 1950); *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740 (Tex. Civ. App. 1949); *Application of Barber*, 100 N.Y:.S.2d 668, 670 (Sup. Ct. Albany County, N.Y. 1951); *Francis v. Iowa*, 98 N.W.2d 733, 735, 736 (Sup. Ct. Iowa); *State ex rel. Dunn v. Ayers*, 113 P.2d 785, 787 (Sup. Ct. Mont. 1941).

### a.  Where is the Source of the Right and Privilege of the Elective Franchise and the Right of Suffrage?

The question arises where is the right or privilege of the elective franchise and the right of suffrage arise under: (1) The Constitution of the United States or (2) the constitution of one of the several States, *i.e.*, being the Constitution of Minnesota?  The answer is found in *United States v. Anthony*, 24 F.Cas. 829, 829, 830 (Cir.Ct. N.D.N.Y. 1873), to wit:

The thirteenth, fourteenth and fifteenth amendments were designed mainly for the protection of the newly emancipated negroes, but full effect must, nevertheless, be given to the language employed.

\* \* \*

The **right of voting,** or the privilege of voting, is a right or privilege **arising under the constitution of the state,** and not under the constitution of the United States; and second, that a right of the character here involved is not one connected with **citizenship of the United States.**

\* \* \*

[I]f rights of a citizen are thereby violated, they are of that fundamental class, **derived from his position as a citizen of the state, and not those** limited rights belonging to him as a citizen of the United States; and such was the decision in *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823).

In *Kineen v. Wells*, 11 N.E. 916, 918, 919 (Sup.Jud.Ct.Mass. 1887), to wit:

If the legislature can impose certain restrictions upon one class of voters, and exempt another, what is the limit to its discretion?
\* \* \*

The **right or privilege of voting is a right or privilege arising under the constitution of each state,** and **not under the constitution of the United States.** The voter is entitled to vote in the election of officers of the United States by

reason of the fact that he is a voter in the state in which he resides. He exercises this right because he is entitled to by the laws of the state where he offers to exercise it, and not because he is a citizen of the United States. *United States v. Anthony*, 24 F.Cas. 829, 830 (Cir.Ct. N.D.N.Y. 1873)

In *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823), a case the Circuit Court of the United States [a bona fide Article III Court] has described the privileges and immunities of the citizens of the several States in great detail including this excerpt to which some additional protections under fourteenth Amendment were overlaid but the fundamental right of the elective franchise is still posited in the constitution of one of the several States, to wit:

> [M]ay be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges **deemed to be fundamental**: to which may be added, the **elective franchise, as regulated and established by the laws or constitution of the state in which it is to be exercised.**

### b. The Fourteenth Amendment Doesn't Apply To "citizens of the United States" in the District of Columbia or to the District of Columbia.

In *Neild v. District of Columbia*, 110 F.2d 246, 250 FN10 (1940) citing the holding of *Wright v. Davidson*, 181 US. 371, 384 (D.C. Cir. 1940), to wit:

> [H]olding the **Fourteenth Amendment inapplicable to the District of Columbia. On the other hand, the rights and liberties protected by the bill of rights (Amendments I to VIII) against encroachment by the national government have been held applicable to the District although not to the states.** Thus, the provisions of the Fourth Amendment are not applicable to the states (*National Safe Deposit Co. v. Stead*, 232 U.S. 58, 34 S.Ct. 209, 58 L.Ed. 504; *Ohio ex rel. Lloyd v. Dollison*, 194 U.S. 445, 24 S.Ct. 703, 48 L.Ed. 1062), although they are to the District. *United States v. Mattingly*, 52 App.D.C. 188, 285 F. 922

A "citizen of the United States" in the District of Columbia's Statutes is a "qualified elector" as found in DC ST § 1-1001.02 (2) "The term **"qualified elector"** means a person who . . . (B) is a **citizen of the United States**." A "citizen of the United States" outside of the District of Columbia under the Fourteenth Amendment is a fiction in law—"All of this is a fiction in law[7]" and has the same rights a "corporation, which is included in the Fourteenth Amendment definition of "person" as found in *Grosjean v.*

---

[7] *McDonald v. City of Chicago*, 130 S.C. 3020, 3062 (2010).

*American Press Co.*, 297 U.S. 233, 244 (1936) and *First National Bank of Boston v. Bellotti*, 436 U.S. 765, 780 FN15 (1978). Also this "citizen of the United States" in 14 Stat. 27 (1866) codified today in 42 U.S.C. §§§ 1981, 1982 and 1988 that has the same rights as a "white citizen" is memorialized in the 14th Amendment.

### c. The Fifteenth Amendment Does not Confer any Right of Suffrage on Anyone, *i.e.*, "citizens of the United States."

The holding in the Supreme Court of the United States holds that the 15th Amendment does not confer any Right of Suffrage on anyone *Le Grand v. United States*, 12 F. 577, 578, 579 (Cir.Ct. E.D.Tx. 1882)0., to wit:

> The fifteenth amendment can have no application. **That amendment relates to the right of citizens of the United States to vote. It does not confer the right of suffrage on any one**. It merely invests citizens of the United States with the constitutional right of exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. *U.S. v. Reese*, 92 U.S. 214 (1875); *United States v. Reese*, 92 U.S. 214 (1875); S.C. 1 Woods, 322 (Cir.Ct. D. La. 1874) affirmed in *United States. v. Cruikshank*, 92 U.S. 542 (1875).

### C. The Tenth Amendment Provides NO Protections to the several States or to the People of the several States Against the Statutory "citizens of the United States".

The Tenth Amendment[8] provides No Protections to the several States or to People of the several States[9] as to rights reserved against this statutory "citizen of the United States" in the New "State" definition codified in 52 U.S.C. § 20502—Definitions "(4) the term "State" means a **State of the United States** and the District of Columbia;" and, this is documented in great detail in this excerpt of *Validity, Construction, and Application of National Voter Registration Act, 42 U.S.C.A. §§ 1973 gg et seq.*, **185 A.L.R. 155 (Originally published in 2003)**, to wit:

---

[8] Tenth Amendment—The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, **are reserved to the States respectively, or to the people.**

[9] Article I Section 2. The House of Representatives shall be composed of Members chosen every second Year by the **People of the several States** and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

§ 4. Tenth Amendment

The following authority adjudicated the validity of The National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) under the Tenth Amendment to the United States Constitution.[10]

In Association of Community Organizations for Reform Now (ACORN) v. Ridge, 1995 WL 136913 (E.D. Pa. 1995), the court held that the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA) is constitutional over the defendants' argument that the NVRA violates the Tenth Amendment to the United States Constitution. In support of their argument, the defendants cited New York v. U.S., 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120, 34 Env't. Rep. Cas. (BNA) 1817, 22 Envtl. L. Rep. 21082 (1992), on remand to, 978 F.2d 705 (2d Cir. 1992), a case which, the court said, discussed the limits of congressional power under the Commerce Clause of the Constitution—a broad and general provision compared to the more specific terms of Article 1, § 4, see § 3. The court said the defendants' Tenth Amendment argument was based on their assertion that the power to regulate registration in the manner set forth in the NVRA was not delegated to the United States and thus exceeded Congress' constitutional grant of authority, but the defendants pointed to no case which either directly or by analogy supported their position. As to the defendants' contention that NVRA law governs the qualifications of voters, a right specifically given to the states, the court emphasized that the NVRA does not establish who is entitled to vote, but rather establishes the method which an otherwise qualified voter must follow to exercise the right to vote. Finally, defendants raised the argument that the state would be burdened by the cost associated with implementation of the NVRA, but the court found no law to support the defendants' position that because a state must bear the cost, the legislation therefore fails to pass constitutional muster. The court remarked, in passing, that recent "unfunded mandate" legislation, in any event, has a much higher monetary threshold than what the state alleged it would have to bear in the instant case.

Rejecting the state of South Carolina's assertion that the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA) violates the Tenth Amendment to the United States Constitution, the court held in Condon v. Reno, -9 (D.S.C. 1995), that the Tenth Amendment provided no protection for South Carolina because of the powers granted to Congress under the provisions of the Fourteenth and Fifteenth Amendments of the United States Constitution (§ 5). Since the Constitution specifically delegates to Congress the power to regulate federal elections (§ 3), and the NVRA is limited to federal elections, the court reasoned, the Tenth Amendment is inapplicable by its own terms. Likewise, the court continued, Congress' powers under the Fourteenth Amendment are not limited by the Tenth Amendment. Specifically, South Carolina contended that the NVRA violated the Tenth Amendment because it compelled the state to expend its own funds, i.e., it was an "unfunded mandate." The court pointed out that no Supreme Court decision has applied the Tenth Amendment to invalidate congressional action on the ground that the action constituted an "unfunded federal mandate." Moreover,

the court noted that Congress appropriated hundreds of millions of dollars to South Carolina to operate the very agencies involved under the NVRA, dollars which were permissibly used for administration of those agencies. It was well within the power of Congress to direct that some of the money it appropriated be spent on voter registration for federal elections, the court said. As to South Carolina's position that the means chosen by Congress to regulate federal elections under the NVRA are beyond its broad powers because Congress conscripted state employees to perform a federal function, the court found, to the contrary, that Congress acted in the least intrusive way to protect the integrity of federal elections. States already record and register their citizens to determine eligibility for certain state and federal programs and activities, including voting, the court observed, and Congress—addressing only the function of voting in a federal election—merely forbade the states from multiplying the burden on citizens. That is, the court stated, Congress determined that the information recorded by the states when citizens obtain drivers' licenses, food stamps, and certain other governmental services, was enough to register those citizens for voting. Opining that the elimination of wasteful, duplicative processes is sound policy in general, the court remarked that when that wasteful duplication deters people from voting, Congress has ample power and justification in not simply hoping for simplification, but in mandating it.

The Sixth Circuit in Association of Community Organizations for Reform Now v. Miller, 129 F.3d 833, 1997 FED App. 323P (6th Cir. 1997), upheld the constitutionality of the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) under the Tenth Amendment of the United States Constitution over the claims of Michigan that Congress overstepped its powers to regulate federal elections by compelling state legislation to effectuate a federal program, directing states to legislate toward a federal purpose, and forcing states to bear the financial burden of enacting a federal scheme. Michigan relied on the Supreme Court's statement in New York v. U.S., 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120, 34 Env't. Rep. Cas. (BNA) 1817, 22 Envtl. L. Rep. 21082 (1992), that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the states to require or prohibit those acts. The court distinguished the New York decision, which addressed a challenge to a congressional exercise of its power under the Commerce Clause of the United States Constitution, a power that enables Congress only to make laws, with the instant case, which addressed a challenge to a congressional exercise of its power to regulate federal elections under Article I, § 4 of the United States Constitution, a power that enables Congress to both make and alter laws affecting the states. Moreover, the court ruled, the express grant of congressional authority to force states to alter their regulations regarding federal elections under Article I, § 4 does not condition its grant of authority on federal reimbursement. When Congress forces the states to shoulder a burden that they rightfully should have accepted without congressional intervention, the court declared, Congress will not be required to bear the cost of such intervention.

The argument of the State of Illinois that the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA) is invalid under the Tenth

Amendment of the United States Constitution was held without merit by the court in Association of Community Organizations for Reform Now (ACORN) v. Edgar, 880 F. Supp. 1215 (N.D. Ill. 1995), aff'd as modified on other grounds, 56 F.3d 791 (7th Cir. 1995) opinion supplemented, 1996 WL 406652 (N.D. Ill. 1996). By definition, the court instructed, the Tenth Amendment does not apply to powers specifically vested in the United States Congress by the Constitution. The court referred to the express authority of Congress under Article I, § 4 of the United States Constitution to make or alter regulations prescribed by the states as to the times, places, and manner of holding federal elections. Furthermore, the court ruled, it was obvious that legislation such as the NVRA, **which implements the Fourteenth and Fifteenth Amendments—the latter prohibiting denial or abridgment of the right to vote by the United States or any state on account of race, color, or previous condition of servitude—cannot run afoul of the Tenth Amendment since the Fourteenth and Fifteenth Amendments were adopted after the Tenth Amendment.**

Affirming the judgment of the district court, which directed the State of California to comply with the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA), the Ninth Circuit in Voting Rights Coalition v. Wilson, 60 F.3d 1411 (9th Cir. 1995), held that Congress did not violate the Tenth Amendment to the United States Constitution in enacting the NVRA. The State of California relied on the Supreme Court's holding in New York v. U.S., 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120, 34 Env't. Rep. Cas. (BNA) 1817, 22 Envtl. L. Rep. 21082 (1992), which stated in relevant part, that Congress may not impose on the states the burden of exercising its power under the Constitution to regulate interstate commerce. The flaw in California's argument, the court instructed, was that it ignored Article I, § 4 which, unlike the commerce power in Article I, § 8, empowered Congress to impose on the states precisely the burden at issue. The court thus decided that Congress may conscript state agencies to carry out voter registration for the election of United States representatives and senators. Moreover, the court said, the exercise of that power by Congress is by its terms intended to be borne by the states without compensation. None of the authorities which recognized the exercise of Congress' power under Article I, § 4 have suggested, even remotely, the necessity of the United States Congress bearing the burden of any alteration it imposed, the court observed. That the actual cost of implementing the NVRA may be significant, the court remarked, did not change the principle embodied in Article I, § 4, but did dictate that the implementation of the NVRA be done sensitively.

Of course to arrive at the ineffectiveness of the Tenth Amendment of today, *supra*, *Validity, Construction, and Application of National Voter Registration Act, 42 U.S.C.A. §§ 1973 gg et seq.*, 185 A.L.R. 155 (Originally published in 2003), therein the holdings of the Supreme Court of the United States evidenced in **Attach 6—1938 Cong. Rec. are ignored,**

to wit:

> **(1) [Pg. 10]** *United States v. Cruikshank et al,* 92 U.S. 542, 554-555 (1875); and,
> **(2) [Pg. 10]** *Minor v. Happersett,* 88 U.S. 162 (1874); and,
> **(3) [Pg. 10]** *United States v. Reese et al.,* 92 U.S. 214 (1875); and,
> **(4) [Pg. 10]** *Strauder v. West Virginia,* 100 U.S. 303 (1879) *[abrogated by Taylor v. Louisiana,* 419 U.S. 522 (1975)) *on other issues*]; and,
> **(5) [Pg. 10]***Virginia v. Rives,* 100 U.S. 13 (1879); and,
> **(6) [Pg. 10]** *Neal v. Delaware,* 103 U.S. 370 (1880); and,
> **(7) [Pg. 10]** *United States v. Harris,* 106 U.S. 629 (1883).

## IV.  The "citizens of the United States" is Exactly the same as the "citizens of the United States" in the Definition of the NVRA Codified at 52 U.S.C. § 20502—Definitions "(4) the term "State" means a State of the United States and the District of Columbia" in the SOM and the District of Columbia—No Discrimination Is Allowed by Congress for the Same very same "Class," being "citizens of the United States

One of unassailable facts is *this Congress* legislates for the "citizens of the United States" wherein Congress is prohibited from any discrimination of ANY type whatsoever.

In the recent Holding of the Supreme Court of the United States of *Dawson v. Steager,* 2019 WL 691579, *1 (2019) of discrimination "A State violates § 111 when it treats retired state employees more favorably than retired federal employees and no "significant differences between the two classes" justify the differential treatment. *Davis v. Michigan dept. of Treasury,* 489 U.S. 803, 814-816 (1989)."  From this holding of discrimination between State and Federal employees that are both "citizens of the United States" *flows a fortiori* that there can be no discrimination against The Mooneys  is NOT a "citizen of the United States" evidenced by **Attach 7—Status**  and **Attach 8—Voter Registration**  and The Mooneys  claims to be "national of the United States" as codified in 8 U.S.C. § 1101(22)(B) "a person who, though not a citizen of the United States, owes permanent allegiance to the United States"

The IRS uses IRC § 6331 and 6332 as pronounced for "non-judicial means" of collecting tax without having to prove to a court the validity of the underlying tax *United States v. Baggot,* 463 U.S. 476, 481 (1983), to wit:

The IRS's decision is largely self-executing, in the sense that it **has independent legal force of its own**, <u>without</u> requiring prior validation or enforcement by a court. The IRS need never go into court to assess and collect the amount owed; it is empowered to collect the tax by non-<u>judicial</u> means (such as levy on property or salary, <u>26 U.S.C. §§ 6331, 6332), without having to prove to a court the validity of the underlying tax liability</u>. Of course, the matter may end up in court if Baggot chooses to take it there, but that possibility does not negate the fact that the primary use to which the IRS proposes to put the materials it seeks is an extra<u>judicial</u> one-the <u>assessment</u> of a tax <u>deficiency</u> by the IRS.

As evidenced in *Baggot, ibid.,* the in IRS § 6331 issue of a <u>**Levy**</u> is limited to only an "**officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or District of Columbia**" as codified in Title 26 of the Internal Revenue Code ("IRC"), *i.e.,* Title 26 of the United States Code[10] ("US.C.") § 6331(a) precluding The Mooneys jurisdictionally as The Mooneys is NOT included within § 6331(a) , to wit:

> <u>**Levy**</u> may be made upon the accrued salary or wages of <u>**any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia,**</u> by serving a notice of levy on the employer (as defined in <u>**section 3401(d)) of such officer, employee, or elected official**</u>. * * *.
>
> **(b) Seizure and sale of property.**--The term <u>**"levy"**</u> as used in this title includes the power of **distraint and seizure by any means.**

As all "citizens of the United States" whether domiciled or residing in (1) **"Several States"** and (1) **"District of Columbia"** or (3) a **foreign country** such as Mexico; therein, *i.e.,* all "citizens of the United States" held subject exactly the same as stated in *Cook v. Tait,* 265 U.S. 47, 55 (1924), to wit:

In other words, the principle was declared that the government, by its very nature,

---

[10] Because the Internal Revenue Code and Title 26 of the United States Coe are identical, even though they are distinct, **for all practical purposes,** Title 26 is positive law. See *O'Boyle v. United States,* 2007 WL 2113583, *1 (S.D.Fla. 2007) unpublished; *United States v. Tourtellot,* 483 B.R. 72, 85 (M.D.N.C 2012). *Lanier v. Wachovia Bank,* 2010 WL 1141267, *8 (E.D.Pa. 2010);

<u>benefits</u> the <u>citizen and his property wherever found</u>, and therefore has the <u>power to make the benefit complete</u>. Or, to express it another way, the basis of the <u>power to tax was not and cannot be made dependent upon the situs of the property in all cases</u>, it <u>being in or out of the United States, nor was not and cannot be made dependent upon the domicile of the citizen, that being in or out of the United States, but upon his relation as citizen to the United States</u> and <u>the relation of the latter to him as citizen.</u> The consequence of the relations is that the native citizen who is taxed may have domicile, and the property from which his income is derived may have situs, in a foreign country and <u>the tax be legal-the government having power to impose the tax.</u>

## V. Conclusion

As **USDC** is not exercising the "judicial Power of the United States" arising under Article III Sections 1 and 2 but is exercising the "judicial Power of a district court" codified in 28 U.S.C. § 132, being in reality a modern-day Star Chamber.

It is an unassailable fact that the Mooneys have NOT received "actual Notice" of a "Notice of Deficiency" according the IRC that mandated to precede any Assessment and Collection processes both administratively and with the CON of the Chief Inquisitor in the **USDC exercising the judicial power of a district court instead of the "judicial Power of the United States" arising under Article III sections 1 and 2.**

It is an unassailable fact the Chief Inquisitor, Pahl and the IRS have never given the Mooney's "actual Notice" that the IRS pertains ONLY to "citizens of the United States" wherein the Mooneys have given "actual notice" to the Chief Inquisistor, Pahl and the IRS that they are NOT "citizens of the United States."

It is an unassailable fact that the Chief Inquisitor, Pahl and the IRS have LYING so far with impunity as stated, *supra*, by a codified Statue of the United States.

Therefore as a Controversy in this instant Case Must again be Dismissed with Prejudice.

My Hand, *William Joseph Mooney*

My Hand, *Jari Therae Mooney*

## VI. Verified Affidavit of William Joseph Mooney

**State of Minnesota**          )
                                ) ss.
**Morrison County**             )

I, William Joseph Mooney, do hereby swear (or affirm) that the facts in this Verified Affidavit and This First Opposition are true and correct under the penalties of perjury.

1. My true name is William Joseph Mooney.

2. I am of the age of majority and competent to testify to the facts in this Verified Affidavit and to the facts evidenced with the "actual notice" in the **Certified Copy** of **"Certificate of Political Status, Citizen Status and Allegiance"** of **William Joseph Mooney** which is a certified copy of the Public Record filed into the **Office of County Recorder, Morrison County, Minnesota, Doc. #556420, being Recorded on June 11th, 2018 that filed into the "District Court of the United States" in Docket 155.**

3. I have personal knowledge that has not been any appearance in this instant Case of the **"Counsel for the United States of America."**

4. I am a "citizen of Minnesota.

5. I am domiciled in the Minnesota, one of the several States.

6. I am not a "citizen of the United States."

7. I am a "national of the United States" that owes permanent allegiance to the United States as codified in 8 U.S.C. § 1101(22)(B) ""a person who, though not a citizen of the United States, owes permanent allegiance to the United States."

8. I am not domiciled, have residence or reside in any "Federal Area" as defined

in codified in 4 U.S.C. § 110.

8.  I have NOT received any "actual notice" of any "Notice of Deficiency" from the IRS to date.

10.  I have NOT received any "actual notice" of that the Internal Revenue Code only has applications to "citizens of the United States" in the District of Columbia exactly as "citizens of the United States" in Minnesota, one of the several States or the definition of "State" in the NVRA of 1993.

11.  I have never given *this Court* **knowingly, tacitly or by any other means "personal jurisdiction."**

12.  I am proceeding in this instant Case under threat, duress and coercion.

13.  There is not one scintilla of sworn testimony in this instant Case.

14.  A "citizen of the United States" has no right of an elective franchise or right of suffrage, being exactly the same in the District of Columbia as the "State of the United States" defined and used exclusively by the **SOM.**

15.  The "**United States of America is a sovereign body politic,**" which will be evidenced by a Motion with the attachment identifying one hundred eight (108) Cases in various USDC's in the public Record evidenced by Docket 152 Attach 2.

16. Judge Nelson's (Chief Inquisitor) holding in Docket 143, Page 5 "[T]here is no legal distinction between the United States and the United States of America" is lie prejudicing this instant Case.

17.  I clothe all of the facts in **Docket 155 of Mooney's Political Status, Citizenship and Allegiance** as true and correct.

18.  I have relied upon the Courts of the United States holdling that Congress can use the IRS to tax all "citizens of the United States" with any legal and lawful means to exercise a right of suffrage in the National Government, *i.e.*, "taxation without representation."

My Hand, 

Sworn and Subscribed before me a Notary Public in and for the State of Minnesota on _March 4, 2019_.

My Civil Commission expires on _Jan 31, 2023_.

_____
Signature of Notary Public

[SEAL]

> CAROLYN D. YOTTER
> NOTARY PUBLIC - MINNESOTA
> MY COMMISSION EXPIRES
> JANUARY 31, 2023

## VII.  Verified Affidavit of Joni Therese Mooney

State of Minnesota      )
                     ) ss.

Morrison County      )

I, Joni Therese Mooney, do hereby swear (or affirm) that the facts in this Verified Affidavit and This First Opposition are true and correct under the penalties of perjury.

1. My true name is Joni Therese Mooney.

2. I am of the age of majority and competent to testify to the facts in this Verified Affidavit and to the facts evidenced with the "actual notice" in the **Certified Copy** of **"Certificate of Political Status, Citizen Status and Allegiance"** of Joni Therese Mooney, which is a certified copy of the Public Record filed into the **Office of County Recorder, Morrison County, Minnesota, Doc. #556419, being Recorded on June 11th, 2018 that filed into the "District Court of the United States" in Docket 156.**

3. I have personal knowledge that has not been any appearance in this instant Case of the **"Counsel for the United States of America."**

4. I am a "citizen of Minnesota."

5. I am domiciled in the Minnesota, one of the several States.

6. I am not a "citizen of the United States."

7. I am a "national of the United States" that owes permanent allegiance to the United States as codified in 8 U.S.C. § 1101(22)(B) ""a person who, though not a citizen of the United States, owes permanent allegiance to the United States."

8. I am not domiciled, have residence or reside in any "Federal Area" as defined in codified in 4 U.S.C. § 110.

8.  I have NOT received any "actual notice" of any "Notice of Deficiency" from the IRS to date.

10.  I have NOT received any "actual notice" of that the Internal Revenue Code only has applications to "citizens of the United States" in the District of Columbia exactly as "citizens of the United States" in Minnesota, one of the several States or the definition of "State" in the NVRA of 1993.

11.  I have never given *this Court* knowingly, tacitly or by any other means "personal jurisdiction."

12.  I am proceeding in this instant Case under threat, duress and coercion.

13.  There is not one scintilla of sworn testimony in this instant Case.

14. A "citizen of the United States" has no right of an elective franchise or right of suffrage, being exactly the same in the District of Columbia as the "State of the United States" defined and used exclusively by the **SOM**.

15.  The "**United States of America is a sovereign body politic**," which will be evidenced by a Motion with the attachment identifying one hundred eight (108) Cases in various USDC's in the public Record evidenced by Docket 152 Attach 2.

16. Judge Nelson's (Chief Inquisitor) holding in Docket 143, Page 5 "[T]here is no legal distinction between the United States and the United States of America" is lie prejudicing this instant Case.

17.  I clothe all of the facts in **Docket 155 of Mooney's Political Status, Citizenship and Allegiance** as true and correct.

18.  I have relied upon the Courts of the United States holding that Congress can

use the IRS to tax all "citizens of the United States" with any legal and lawful means to exercise a right of suffrage in the National Government, *i.e.*, "taxation without representation."

My Hand, *Jai Therese Money*

Sworn and Subscribed before me a Notary Public in and for the State of Minnesota on *March 4, 2019*.

My Civil Commission expires on *Jan 31, 2023*.

*Carolyn D. Yotter*
Signature of Notary Public

[SEAL]

CAROLYN D. YOTTER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES
JANUARY 31, 2023

2nd Opposition to Dockets 170, 171 and 172    35

## VIII.  Certificate of Service

I certify that this Second Opposition is comprised of 11,356 words in 13 Font in Times New Roman.

I certify that true and correct copy of this Opposition

with Attachments was delivered personally or mailed USPS

First Class to the following parties, to wit:

**Michael R. Pahl**
**Depart of Justice, Tax Division**
**P.O. Box 7238 Ben Franklin Station**
**Washington, D.C. 20044**
Phone 202-514-6488
Fax    202-514-6770

Date:  March 4th, 2019

_____
Signature