Attachment
1
Memorandum 2



UNITED STATES · OF AMERICA

# Congressional Record

### PROCEEDINGS AND DEBATES OF THE 79th CONGRESS
### SECOND SESSION

## VOLUME 92—PART 2

### FEBRUARY 19, 1946, TO MARCH 28, 1946
### (PAGES 1443 TO 2780)

Property of
ANCHORAGE COMMUNITY COLLEGE
21693

NOT TO LEAVE LIBRARY

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1946

SCANNED
MAR 05 2019
U.S. DISTRICT COURT MPLS

2148 CONGRESSIONAL RECORD—SENATE MARCH 12

H. R. 4884. An act to relieve certain employees of the Veterans' Administration from financial liability for certain overpayments and allow such credit therefor as is necessary in the accounts of Guy F. Allen, chief disbursing officer.

## HOUSE BILL AND JOINT RESOLUTION REFERRED

The following bill and joint resolution were each read twice by their titles and referred, as indicated:

H. R. 5605. An act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1947, and for other purposes; to the Committee on Appropriations.

H. J. Res. 307. Joint resolution to authorize the use of naval vessels to determine the effect of atomic weapons upon such vessels; to the Committee on Naval Affairs.

## ADMINISTRATIVE PROCEDURE ACT

The Senate resumed the consideration of the bill (S. 7) to improve the administration of justice by prescribing fair administrative procedure.

Mr. McCARRAN. Mr. President, the unfinished business before the Senate is S. 7, the administrative procedure bill, which has been so long considered and studied by this body. In order that the Senate may have a preview of what it shall consider in connection with the bill, I send to the desk a very able article by Mr. Willis Smith, president of the American Bar Association, entitled "Drafting the Proposed Federal Administrative Procedure Act," and I ask that the clerk may read the article, because it is brief, and will lend emphasis to the explanation which I shall make of the bill immediately.

The PRESIDING OFFICER (Mr. TUNNELL in the chair). Without objection, the clerk will read as requested.

The Chief Clerk read as follows:

DRAFTING THE PROPOSED FEDERAL ADMINISTRATIVE PROCEDURE ACT

(By Willis Smith [1])

"How to assure public interaction, how to provide for rule making where no formal hearing is provided, how to assure fairness in adjudications, how to confer various incidental procedural rights, how to limit sanctions, how to state all the essentials of a right to judicial review, and how to make examiners independent—these were the main questions."

During the last 3 months of 1945 there took place a remarkable series of events in connection with the proposed statute regulating Federal administrative procedure and conferring powers of court review. . On October 19, 1945, the Attorney General of the United States issued a strong statement in support of it. On the following November 19 the Committee on the Judiciary of the United States Senate unanimously and favorably reported it. (S. 7, Rept. No. 752). On December 10 it was introduced in the House of Representatives as H. R. 4941 in the form reported by the Senate committee. On December 18 and 19, at the sixty-eighth annual meeting of the American Bar Association, Chairman HATTON W. SUMNERS, of the Committee on the Judiciary of the House of Representatives made a favorable statement on it. Attorney General Tom C. Clark gave a full address on the subject, and resolutions in favor of it were adopted.

In these days, when so much legislation is done piecemeal and the demands of special interests hold the center of the stage, the legislative proposal which has met with such general acceptance is even more notable because it deals broadly with the problem of administration and is a measure for good government. It deals with procedure, not privileges, and provides a general method of assuring that government will operate according to law. A bill of that character in these days required a background of preparation to achieve such acceptance.

The proposed statute involves almost all administrative operations. It deals with this very important problem of the relation of courts to administrative agencies. It is obviously not such a statute as may easily be drawn and simply submitted to the usual legislative routine. The method of procedure adopted by the Senate Judiciary Committee, under the chairmanship of Senator PAT McCARRAN, of Nevada, recognized the nature of the task. That method is not only important for this bill but opens possibilities for the future.

### LEGISLATIVE HISTORY

For more than 10 years Congress has considered proposals for general statutes respecting administrative law and procedure. Ten or more important bills have been introduced in Congress, and most of them have received widespread consideration.

In 1937 the President's Committee on Administrative Management recommended the complete separation of investigative-prosecuting functions and personnel from deciding functions and personnel in administrative agencies, but the significance of its report was lost in the turmoil of other issues. In 1938 the Senate Committee on the Judiciary held hearings on a proposal for the creation of an administrative court. In 1939 the Walter-Logan administrative procedure bill was favorably reported to the Senate. In 1940 it was passed by the Congress but vetoed by the President in part on the ground that action should await the then imminent final report by a committee appointed in the executive branch. Early in 1941 that committee, popularly known as the Attorney General's Committee on Administrative Procedure, made its extensive report.

Growing out of the work of the Attorney General's Committee on Administrative Procedure, several bills were introduced in 1941. Senate hearings were held on these bills during April, May, June, and July of that year. All interested administrative agencies were heard at length and the proposals then pending involved the basic issues.

Further consideration was postponed for three war years. Bills were again introduced in June 1944 and reintroduced with revisions in 1945. The Committee on the Judiciary of the House of Representatives held hearings in June 1945, but it seemed clear that the real problems were detailed and technical. It had come to be widely accepted that such legislation should be functional in the sense that it should apply to kinds of operations rather than to forms of agencies. Accordingly, the proposed statute dealt primarily with the legislative and judicial functions of administrative agencies. Within each, of those functions, however, it was necessary to define procedures and except subjects which were either not regulatory in character or were soundly committed to Executive discretion.

### TECHNICAL REVISIONS

Anticipating that this would be the situation, the chairmen of the Judiciary Committees of the Senate and House of Representatives had requested administrative agencies to submit their views and suggestions in writing. The Attorney General was requested to act as a liaison officer between the legislative committee and the several administrative agencies. Representatives of the staff of the Senate committee, with the aid of representatives of the Attorney General and other interested parties, engaged in an extensive series of conferences at which points made were discussed and alternative proposals as to language were debated. Then, in May 1945, the Senate committee issued a committee print in which the text of S. 7 appeared in one column and a tentatively revised text in the parallel column.

The revised text so proposed was then again submitted to administrative agencies and other interested parties for their written or oral comments, which were analyzed by the committee's staff and a further committee print was issued in June 1945. In four parallel columns it set forth (1) the text of the bill as introduced, (2) the text of the tentatively revised bill previously published, (3) a general explanation of provisions with reference to the report of the Attorney General's Committee on Administrative Procedure and other authorities, and (4) a summary of views and suggestions received.

About this time Tom C. Clark became Attorney General and added new representatives to the conference group. Senator McCARRAN, chairman of the Senate Committee on the Judiciary, asked that they screen and correlate any further agency views. After this had been done and representatives of private organizations had submitted their additional views, the bill as further revised was made a committee print under date of October 5, 1945.

This final draft was submitted to the Attorney General for his formal perusal. He not only reported that the proposal was not objectionable, but recommended its enactment in a strong statement on October 19, 1945. A month later the Senate committee reported the measure. Its report of 31 pages plus appendix reflects the long and painstaking consideration given the bill. The process of that consideration was not only well adapted to the technical nature of the job at hand but it was truly democratic, for private as well as governmental representatives were given every opportunity to submit their views and suggestions.

### PARTICIPATION OF LEGAL PROFESSION

The organized bar had the same opportunities for presentation of views and suggestions. Bar associations had adopted resolutions and had presented reports to the congressional committees. The American Bar Association's special committee on administrative law took an active part, culminating in a full day's meeting of the 18-man committee at Washington on October 2. The committee unanimously approved the final draft of the bill and certified its position to the chairmen of the congressional committees.

Contrary to the impression which some people seem to have, the proposed Administrative Procedure Act is not a compromise. The problem was not "how much" but "how." How to assure public interaction, how to provide for rule making where no formal hearing is provided, how to assure fairness in adjudications, how to confer various incidental procedural rights, how to limit sanctions, how to state all the essentials of a right to judicial review, and how to make examiners independent—these were the main questions.

There were two reasons why the legal profession could not engage in trading for advantage in the details. First, if the statute should prove unworkable, it might prejudice procedural legislation for all time. Secondly, onerous requirements, such as those respecting evidence, might aid one private interest in one case—that is, where prohibitory orders are issued—but would harm them in another—e. g., where a license is sought. Mainly, however, it was a simple matter of good citizenship and good statesmanship to seek the best and fairest provisions for each subject.

### CONCLUSION

The draft of bill as reported by the Senate Committee on the Judiciary offers a means

[1] The author is a member of the Raleigh (N. C.) bar and president of the American Bar Association.

Attachment 1 - page 2 of 7

of securing and maintaining a government according to law. Its workability has been tested by the elaborate procedure discussed above. Its utility has been approved by the representatives of most of the legal professions. Its desirability is admitted by public officers of the highest rank. The necessity for it has been attested by the responsible Members of the National Legislature. If it is adopted, as it should speedily be, the result will be due to the background of study and care with which its terms have been drafted and tested.

Mr. McCARRAN. Mr. President, it has been said that the law is a jealous mistress. I regret exceedingly that I cannot have before me at this moment every Member of the Senate of the United States so that each might listen to the explanation of a bill which to my mind and to the mind of the bar of America is one of the most important measures that has been presented to the Congress of the United States in its history.

We have set up a fourth order in the tripartite plan of Government which was initiated by the founding fathers of our democracy. They set up the executive, the legislative, and the judicial branches; but since that time we have set up a fourth dimension, if I may so term it, which is now popularly known as administrative in nature. So we have the legislative, the executive, the judicial, and the administrative.

Perhaps there are reasons for that arrangement. We found that the legislative branch, although it might enact law, could not very well administer it. So the legislative branch enunciated the legal precepts and ordained that commissions or groups should be established by the executive branch with power to promulgate rules and regulations. These rules and regulations are the very things that impinge upon, curb, or permit the citizen who is touched by the law, as every citizen of this democracy is.

The bill comes from the Committee on the Judiciary of the Senate of the United States, and I think it should be explained to every Member of the Senate, because the Committee on the Judiciary desires that there should be a full understanding of its provisions and purposes. The Committee on the Judiciary is the law committee of this body, and the law is the thing which makes democracy vital. This is not a Government of men. It is a Government of law; and this law is a thing which, every day from its enactment until the end of time so far as this Government is concerned, will touch every citizen of the Republic. So I proceed with a detailed explanation of a bill which should be listened to by every Member of the Senate.

Mr. President, Calendar No. 758, Senate bill 7, the purpose of which is to improve the administration of justice by prescribing fair administrative procedure, is a bill of rights for the hundreds of thousands of Americans whose affairs are controlled or regulated in one way or another by agencies of the Federal Government. It is designed to provide guaranties of due process in administrative procedure.

The demand for legislation of this type to settle and regulate the field of Federal administrative law and procedure has

been widespread and consistent over a period of many years. Today there are no clearly recognized legal guides for either the public or the administrative officials of Government departments. The subject of administrative law and procedure is not expressly mentioned in the Constitution, and there is no recognizable body of such law, as there is for the courts in the Judicial Code.

Even the ordinary operations of administrative agencies are often difficult to know, and undoubtedly there have been litigants before Government agencies who have received less than justice because they were not fully advised of their rights of the procedure necessary to protect them.

The Committee on the Judiciary has been convinced that there should be a simple and standardized plan of administrative procedure. This bill is intended to put such a plan into effect.

Proposals for general statutes respecting administrative law and procedure have been before the Congress in one form or another, and have been considered by the Congress over a period of more than 10 years. I call the attention of the Senate to the chart on page 2 of the Judiciary Committee's report on Calendar No. 758, Senate bill 7. This is Senate Report No. 752, which is on the desks of all Senators. This chart clearly shows the chronology of the main bills on this subject which have been introduced. Each of the bills shown on this chart has received wide public attention and long and serious consideration in the Congress. Problems of administrative law and procedure have been increased and aggravated by the continued growth of the Government, particularly in the executive branch. By the middle of the 1930's the situation had become so serious that the President then in office appointed a committee to make a comprehensive survey of administrative methods, overlapping functions, and diverse organizations, and to submit suggestions for improvement. While that committee was not primarily concerned with the more detailed questions of administrative law and procedure as the term is now understood, the committee inevitably was brought face to face with the fundamental problem of the inconsistent union of prosecuting and deciding functions exercised by many executive agencies.

In 1937 the President's Committee on Administrative Management issued its report. I quote excerpts from that report:

The executive branch of the Government of the United States has . . . grown up without plan or design. . . . To look at it now, no one would ever recognize the structure which the founding fathers erected a century and a half ago. . . . Commissions have been the result of legislative groping rather than the pursuit of a consistent policy. . . . They . . . in reality miniature independent governments set up to deal with the railroad problem, the banking problem, or the radio problem. They constitute a headless "fourth branch" of the Government, a haphazard deposit of irresponsible agencies and uncoordinated powers. . . . There is a conflict of principle involved in their make-up and functions. . . . They are vested with duties of administration . . . and at the

same time they are given important judicial work. . . . The rule resulting from this confusion of principles are insidious and far-reaching. . . . Pressures and influences properly enough directed toward officers responsible for formulating and administering policy constitute an unwholesome atmosphere in which to adjudicate private rights. But the mixed duties of the commissions render escape from these subtle influences impossible. Furthermore, the same men are obliged to serve both as prosecutors and as judges. This not only undermines judicial fairness; it weakens public confidence in that fairness. Commission decisions affecting private rights and conduct lie under the suspicion of being rationalizations of the preliminary findings which the Commission, in the role of prosecutor, presented to itself.

Mr. President, I have been quoting from the report of the President's Committee on Administrative Management, issued in 1937. In transmitting that report to the Congress, President Roosevelt added a comment of his own, from which I also wish to quote. He said:

I have examined this report carefully and thoughtfully, and am convinced that it is a great document of permanent importance. . . . The practice of creating independent regulatory commissions, who perform administrative work in addition to judicial work, threatens to develop a "fourth branch" of the Government, for which there is no sanction in the Constitution.

Mr. President, those are the words of the late, beloved President of the United States, Franklin Delano Roosevelt.

The remedy proposed by that committee, back in 1937, was a very drastic one, namely, complete separation of investigative and prosecuting functions and personnel from deciding functions and personnel. That remedy had inherent administrative difficulties which, while not so great as the fault which it sought to remedy, were in themselves serious. The pending bill does not go as far as that 1937 recommendation.

A proposal for creation of an administrative court came before the Senate Judiciary Committee in 1938 and extensive hearings were held. In connection with those hearings, the Judiciary Committee issued a committee print elaborately analyzing the administrative powers conferred by statute. That was in the third session of the Seventy-fifth Congress. In the following year, 1939, the Walter-Logan administrative procedure bill was favorably reported to the Senate from the Committee on the Judiciary. That was during the Seventy-sixth Congress, first session, and the report I have mentioned was Senate Report 442 of that Congress, reporting on Senate bill 915 of that Congress. In the third session of the Seventy-sixth Congress, the Walter-Logan bill was reported to the House of Representatives with amendments. The bill eventually was passed by the Congress, but was vetoed by the President in 1940, partly on the ground that action should await the final report of a committee which had been appointed 2 years earlier to study the entire situation.

The committee which the President had in mind was the so-called Attorney General's committee, which had been appointed in December 1938. The background of that committee was a renewed

ceptions. It is thus not aimed at any particular agency or agencies. The Walter-Logan bill, on the other hand, contained is great many exceptions of agencies and subjects. Section 7 (b) was thought to indicate either that it was aimed at particular agencies, or was so imperfectly conceived that it could not be applied across the board. The pending bill does, however, in section 2 (a), exempt war agencies, because they are presumably self-liquidating, and it was deemed unwise to attempt to cover them at this late date.

The definitions of the Walter-Logan bill were imperfect and confusing. Rules were so defined as to include "orders" and were limited to interpretations of terms of statutes. That bill, therefore, failed to distinguish between substantive, interpretive, and procedural rules. The pending bill exempts from its procedural requirements all interpretive, organizational and procedural rules, because under present law interpretive rules, being merely adaptations of interpretations of statutes, are subject to a more ample degree of judicial review, and because the problem with respect to the other exempted types of rules is to facilitate their issuance rather than to supply procedures.

The pending bill, therefore, applies procedures only to the making of so-called substantive rules, that is, through administrative legislation under authority of Congress. Other definitions in the Walter-Logan bill are entirely different from those in the pending bill, but, in answer to the Senator from Kentucky, I believe that nothing will be gained by examining those differences here.

Mr. BARKLEY. In other words, the Senator's bill is the result of a careful study of the whole subject made since the consideration by Congress of the Walter-Logan bill, and since the formal veto of that measure by the President, and the recommendation of former Attorney General Homer Cummings who, I believe, as one of the last things which he did before retiring, recommended legislation along this line without going into detail about it. Subsequently a committee was appointed, perhaps by the present Attorney General or one of his predecessors—

Mr. McCARRAN. A former Attorney General.

Mr. BARKLEY. A former Attorney General, all of which took place following the consideration of the previous legislation known as the Walter-Logan bill, or the Logan-Walter bill, I do not know which. However, in the main, the pending bill complies with the recommendations of the various investigations which have been made since consideration of the Walter-Logan bill with respect to legislation upon this subject.

Mr. McCARRAN. I would not use the word "complies." I would say that the bill takes into consideration those studies and is guided by them.

Mr. BARKLEY. I did not mean in my use of the word "complies" that the bill followed the recommendations word for word, but it does take into consideration the facts developed by the various investigations to which I have referred.

The committee has been, of course, well informed as to the validity of any recommendations made upon the subject, but it does approach the subject from the standpoint of helpfulness in the administration of the law, rather than from the standpoint of undertaking to nullify what executive departments set up by Congress might be attempting to do.

Mr. McCARRAN. Positively, we nullify nothing.

Mr. BARKLEY. That was my objection to the former measure, as the Senator will recall.

Mr. McCARRAN. I do recall very well. I may say to the Senator from Kentucky that earlier in my discourse upon the pending bill I discussed the differentiations between the Walter-Logan bill and the Attorney General's committee report, and so on.

Mr. BARKLEY. I was necessarily called from the Chamber and was not present.

Mr. McCARRAN. I realize that.

Mr. President, section 3 of the bill concerns provisions respecting public information and it should be noted that the bill exempts from the public-information provisions of this section, first, matters requiring secrecy in the public interest, and second, matters relating solely to the internal management of an agency.

Subsection (a) of section 3 concerns rules. Under this subsection every agency is required to publish in the Federal Register its organization, the places of doing business with the public, its methods of rule making and adjudication, including the rules of practice relating thereto, and such substantive rules as it may frame for the guidance of the public. No person is in any manner to be required to resort to organization or procedure not so published.

Subsection (b) of section 3 concerns opinions and orders. Under this subsection agencies are required to publish or, pursuant to rule, to make available to public inspection all final opinions or orders in the adjudication of cases except those held confidential for good cause and not cited as precedents.

Subsection (c) of section 3 concerns public records, and provides that except as statutes may require otherwise, or information may be held confidential for good cause, matters of official record are to be made available to persons properly and directly concerned, in accordance with rules to be issued by the agency.

Section 4 concerns rule making. The introductory clause exempts from all of the requirements of section 4 any rule making, so far as there are involved military, naval, or foreign affairs functions, or matters relating to agency management or personnel, or to public property, loans, grants, benefits, or contracts.

Mr. President, I wish the Senate would give close consideration to what I am about to discuss, because it is all important.

Subsection (a) of section 4 concerns notice. It provides that general notice of proposed rule making must be published in the Federal Register and must include the time, place, and nature of the proceedings, a reference to the authority under which such proceedings are held, and the terms, substance, or

issues involved. However, except where notice and hearing is required by some other statute, the subsection does not apply to rules other than those of substance, or where the agency for good cause finds, and incorporates the finding and reasons therefor in the published rule, that notice and public procedure are impracticable, unnecessary, or contrary to the public interest.

Subsection (b) of section 4 concerns procedures. This subsection provides that after such notice as required by the preceding subsection, the agency must afford interested persons an opportunity to participate in the rule-making, at least to the extent of submitting written data, views, or argument. This subsection also provides that after consideration of such presentations, the agency much incorporate in any rules adopted a concise general statement of their basis and purpose. However, where other statutes require rules to be made after hearing, the requirements of sections 7 and 8, which relate to public hearings and decisions thereon, apply in place of the provisions of this subsection.

Subsection (c) of section 4 refers to effective dates. The required publication or service of any substantive rule must, under this provision, be made not less than 30 days prior to the effective date of such rule, except as otherwise provided by the agency for good cause found and published, or, in the case of rules recognizing exemption or relieving restriction, interpretative rules, and statements of policy.

Subsection (d) of section 4 concerns petitions, and provides that every agency shall accord any interested person the right to petition for the issuance, amendment, or repeal of a rule.

Section 5 of the bill concerns adjudications. The initial provision of this section makes it clear that subsequent provisions of the section apply only where the case is otherwise required by statute to be determined upon an agency hearing, except that, even in that case, the following classes of operations are expressly not affected: First, cases subject to trial de novo in court; second, selection or tenure of public officers other than examiners; third, decisions resting on inspections, tests, or elections; fourth, military, naval, and foreign affairs functions; fifth, cases in which an agency is acting for a court; and, sixth, the certification of employee representatives.

Subsection (a) of section 5 refers to notice. Under this subsection, persons entitled to notice of an agency hearing are to be duly and timely informed of the time, place, and nature of the hearing, the legal authority and jurisdiction under which it is to be held, and the matters of fact and law asserted. Where private persons are the moving parties, respondents must give prompt notice of issues controverted in law or fact; and in other cases the agency may require responsive pleading. In fixing the times and places for hearings the agency must give due regard to the convenience and necessity of the parties.

Subsection (b) of section 5 concerns procedure. Under this subsection the agency is required first to afford parties



UNITED STATES ⟨seal⟩ OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 79th CONGRESS

SECOND SESSION

## VOLUME 92—PART 5

MAY 23, 1946, TO JUNE 12, 1946
(PAGES 5451 TO 6770)

Property of
ANCHORAGE COMMUNITY COLLEGE
21696

NOT TO LEAVE LIBRARY

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1946

we are legislating in a new field. I think it is the part of wisdom not to go as far perhaps as some of us would like, but to go carefully, note mistakes and profit by them.

All I intend to do, Mr. Chairman, is to make a rather brief statement of what is in the bill.

Mr. GRANGER. Mr. Chairman, will the gentleman yield?

Mr. GWYNNE of Iowa. I yield.

Mr. GRANGER. There are a number of us in Congress, of course, who are not lawyers. This bill I suppose is fully understood by those who are members of the legal profession. As I understood the purpose of the bill—I was somewhat confused by the gentleman's statement that it was to regulate bureaus—my impression was that it was simply a bill to make uniform rules promulgated by the bureaus and practice before the various boards and commissions of the country. Is not that generally what it is supposed to do?

Mr. GWYNNE of Iowa. No; I would not say that was all of it. It does not as a matter of fact make uniform practice before bureaus and tribunals. It requires these agencies of Government in their practice to maintain certain minimum standards. It is an attempt to bring into the practice of these bureaus and tribunals those principles of due process that we understand and that have been enforced in the courts. If I may proceed for a few minutes I believe I will make these things clear as I go along. I really wish to touch the bill a little. I will yield later if I have time.

After a law has been passed by the Congress, before it applies to the individual citizen there are about three steps that must be taken. First, the bureau having charge of enforcement must write rules and regulations to amplify, interpret, or expand the statute that we passed; rule making, we call it. Second, there must be some procedure whereby the individual citizen who has some contact with the law can be brought before the bureau and his case adjudicated. You might refer to that as adjudication or hearing. Finally, there must be some procedure whereby the individual may appeal to the courts from the action taken by the bureau. This bill, briefly, touches all three.

In the matter of rule making the bill provides, for instance, this in substance: It requires the agency to give notice of its intention to make rules and regulations. It requires the agency to allow interested parties to appear and state their views and request that certain rules and regulations be adopted. That would be much like the hearings that we now have before our committees in the Government. Incidentally, that practice is now being followed by certain agencies of the Government. Then it requires that these rules or regulations which have the effect of law must be published in the Federal Register and go into effect at some future date. That is stating it very briefly but that is the substance of what is required on the important subject of rule making.

Then we come to the question of adjudication. How is an individual who violates, or let us say who wishes some action under, these rules and regulations, how is his case to be disposed of? On that point I think there is some difference between the present bill and the Walter-Logan bill. This bill is not as definite in its requirements. It lays down certain minimum standards which must be observed by the bureau or tribunal.

The bill provides that the agency must give notice to the individual of the hearing, also of the time and place, much the same as notice is given now in civil suits. The person affected may appear by lawyer or by some one who is not a lawyer, if that practice is allowed in that particular agency. Hearings may be had before the agency sitting together or by any member or members of the agency or, finally, by hearing examiners, which is probably usually the case.

The trial proceeds much after the fashion of a hearing before industrial commissions or boards who have charge of the administration of the workmen's compensation in various States. The rules of evidence are not restricted to those matters of competency that we enforce in court; nevertheless an attempt is made in the bill to require the presiding judge, so to speak, to confine the case at issue to relevant and probative testimony.

An important feature of the bill in this connection has to do with the appointment of examiners and there is a provision to keep the deciding functions separate and distinct from the prosecution part of it. Great complaint has been made that agencies send out people to prosecute the individual and, from the same office and subject to the same direction, they send out the hearing examiner who is to hear the case. This provides for separation of these functions and prohibits one from meddling with the other.

It also provides that these hearing examiners shall be appointed by the agency in accordance with civil-service rules. The salaries of the examiners are fixed by the Civil Service Commission and promotions and increases in salaries are also fixed by that Commission.

It is hoped to at least make a start, although I think it does not go as far as it should, in arriving eventually at a complete separation between the deciding functions and the prosecuting functions.

The only other and remaining feature I would like to mention has to do with appeals, then I shall be glad to yield. The great difficulty with our present setup is that many of these agencies are not subject to court review and many of them even if we pass this bill will still not be subject to court review. This bill does not give a court review in any case where review is now precluded by statute. It simply clarifies and expands in some particulars the authority of the court in reviewing cases in which court review is not precluded by law. In general they can reverse or modify the judgment on these grounds:

First. If the finding is contrary to some provision of the Constitution;

Second. If the tribunal or agency has failed to follow the procedure provided by law;

Third. If the decision is arbitrary or capricious; and

Finally, and very important, if the finding of the agency is not supported by substantial evidence.

Mr. Chairman, a lot can be said about this bill, but I will not proceed any further because I want to yield.

The CHAIRMAN. The time of the gentleman from Iowa has expired.

Mr. HANCOCK. Mr. Chairman, I yield the gentleman three more minutes.

Mr. MURDOCK. Mr. Chairman, will the gentleman yield?

Mr. GWYNNE of Iowa. I yield to the gentleman from Arizona.

Mr. MURDOCK. I want to say to the gentleman that I have received numerous communications from her associations and legal authorities in my State supporting this bill and calling on me to support it. Not being a lawyer, I am glad to have the gentleman's clear-cut statement. However, in addition to that, what I would like to know is this: Has the machinery set up been such as to cause delay in the working out of justice for the citizen in review procedure and that sort of thing?

Mr. GWYNNE of Iowa. Does the gentleman mean the present procedure?

Mr. MURDOCK. No; I am inquiring about the machinery set up in this bill.

Mr. GWYNNE of Iowa. Oh, I would say not. I would say it certainly should not cause delay. It should expedite proceedings, if anything.

Mr. VOORHIS of California. Mr. Chairman, will the gentleman yield?

Mr. GWYNNE of Iowa. I yield to the gentleman from California.

Mr. VOORHIS of California. On the matter of court review, I wanted to ask the gentleman whether the bill will or will not make a change in the situation which now pertains as to certain agencies where, if the position of that agency is supported by any degree of reasonable evidence, the court must not go beyond that decision? Does not the bill give the court somewhat broader powers from that point of view than it would have otherwise?

Mr. GWYNNE of Iowa. Right.

Mr. VOORHIS of California. Would the gentleman expand on that a little bit? I think it is very important.

Mr. GWYNNE of Iowa. I might say rather briefly that there are two conflicting theories that have often been expounded by the courts. One is that if the verdict of the jury or if the finding of the triers of fact is sustained by a scintilla of evidence, any evidence, no matter how lacking in probative force, the court must sustain it. The other is that the court need not sustain a finding unless it is supported by substantial evidence. The latter is the view adopted in this bill.

Mr. VOORHIS of California. That is a change from the practice that is now in effect in regard to some agencies, is it not?

Mr. GWYNNE of Iowa. That is correct.

Mr. SPRINGER. Mr. Chairman, will the gentleman yield?

Mr. GWYNNE of Iowa. I yield to the gentleman from Indiana.

the streets. One of them said: "You know what's the matter wid Mr. Ikus?"

The other one asked, "What you think is wrong wid 'im?"

"Well," he said, "he seems to be puffed up wid his own consequences."

The other one said, "You's wrong; Mr. Ikus is just an optimist."

The first one asked: "What is a optomist?"

The other one said: "An optimist is a fella 't just don't give a damn what happens, so it don't happen to him."

The CHAIRMAN. The Clerk will read.

The Clerk read, as follows:

*Be it enacted, etc.,* That this act may be cited as the "Administrative Procedure Act."

With the following committee amendment:

Strike out all after the enacting clause and insert:

### "TITLE

"SECTION 1. This act may be cited as the 'Administrative Procedure Act.'

### "DEFINITIONS

"SEC. 2. As used in this act—

"(a) Agency: 'Agency' means each authority (whether or not within or subject to review by another agency) of the Government of the United States other than Congress, the courts, or the governments of the possessions, Territories, or the District of Columbia. Nothing in this act shall be construed to repeal delegations of authority as provided by law. Except as to the requirements of section 3, there shall be excluded from the operation of this act (1) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them, (2) courts martial and military commissions, (3) military or naval authority exercised in the field in time of war or in occupied territory, or (4) functions which by law expire on the termination of present hostilities, within any fixed period thereafter, or before July 1, 1947, and the functions conferred by the following statutes: Selective Training and Service Act of 1940; Contract Settlement Act of 1944; Surplus Property Act of 1944.

"(b) Person and party: 'Person' includes individuals, partnerships, corporations, association, or public or private organizations of any character other than agencies. 'Party' includes any person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any agency proceeding; but nothing herein shall be construed to prevent an agency from admitting any person or agency as a party for limited purposes.

"(c) Rule and rule making: 'Rule' means the whole or any part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of any agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing upon any of the foregoing. 'Rule making' means agency process for the formulation, amendment, or repeal of a rule.

"(d) Order and adjudication: 'Order' means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency in any matter other than rule making but including licensing. 'Adjudication' means agency process for the formulation of an order.

"(e) License and licensing: 'License' includes the whole or part of any agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission. 'Licensing' includes agency process respecting the grant, renewal, denial, revocation, suspension, annulment, withdrawal, limitation amendment, modification, or conditioning of a license.

"(f) Sanction and relief: 'Sanction' includes the whole or part of any agency (1) prohibition, requirement, limitation, or other condition affecting the freedom of any person; (2) withholding of relief; (3) imposition of any form of penalty or fine; (4) destruction, taking, seizure, or withholding of property; (5) assessment of damages, reimbursement, restitution, compensation, costs, charges, or fees; (6) requirement, revocation, or suspension of a license; or (7) taking of other compulsory or restrictive action. 'Relief' includes the whole or part of any agency (1) grant of money, assistance, license, authority, exemption, exception, privilege, or remedy; (2) recognition of any claim, right, immunity, privilege, exemption, or exception; or (3) taking of any other action upon the application or petition of, and beneficial to, any person.

"(g) Agency proceeding and action: 'Agency proceeding' means any agency process as defined in subsections (c), (d), and (e) of this section. 'Agency action' includes the whole or part of every agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.

### "PUBLIC INFORMATION

"SEC. 3. Except to the extent that there is involved (1) any function of the United States requiring secrecy in the public interest or (2) any matter relating solely to the internal management of an agency—

"(a) Rules: Every agency shall separately state and currently publish in the Federal Register (1) descriptions of its central and field organization delegations by the agency of final authority and the established places at which, and methods whereby, the public may secure information or make submittals or requests; (2) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal or informal procedures available as well as forms and instructions as to the scope and contents of all papers, reports, or examinations; and (3) substantive rules adopted as authorized by law and statements of general policy or interpretations formulated and adopted by the agency for the guidance of the public, but not rules addressed to and served upon named persons in accordance with law. No person shall in any manner be required to resort to organization or procedure not so published.

"(b) Opinions and orders: Every agency shall publish or, in accordance with published rule, make available to public inspection all final opinions or orders in the adjudication of cases (except those required for good cause to be held confidential and not cited as precedents) and all rules.

"(c) Public records: Save as otherwise required by statute, matters of official record shall in accordance with published rule be made available to persons properly and directly concerned except information held confidential for good cause found.

### "RULE MAKING

"SEC. 4. Except to the extent that there is involved (1) any military, naval, or foreign affairs function of the United States or (2) any matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts—

"(a) Notice: General notice of proposed rule making shall be published in the Federal Register (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law) and shall include (1) a statement of the time, place, and nature of public rule-making proceedings; (2) reference to the authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. Except where notice or hearing is required by statute, this subsection shall not apply to interpretative rules, general statements of policy, rules of agency organization, procedure, or practice, or in any situation in which the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

"(b) Procedures: After notice required by this section, the agency shall afford interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity to present the same orally in any manner, and, after consideration of all relevant matter presented, the agency shall incorporate in any rules adopted a concise general statement of their basis and purpose. Where rules are required by statute to be made on the record after opportunity for an agency hearing, the requirements of sections 7 and 8 shall apply in place of the provisions of this subsection.

"(c) Effective dates: The required publication or service of any substantive rule (other than one granting or recognizing exemption or relieving restriction or interpretative rules and statements of policy) shall be made not less than 30 days prior to the effective date thereof except as otherwise provided by the agency upon good cause found and published with the rule.

"(d) Petitions: Every agency shall accord any interested person the right to petition for the issuance, amendment, or repeal of a rule.

### "ADJUDICATION

"SEC. 5. In every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, except to the extent that there is involved (1) any matter subject to a subsequent trial of the law and the facts de novo in any court; (2) the selection or tenure of an officer or employee of the United States other than examiners appointed pursuant to section 11; (3) proceeding in which decisions rest solely on inspections, tests, or elections; (4) the conduct of military, naval, or foreign-affairs functions; (5) cases in which an agency is acting as an agent for a court; and (6) the certification of employee representatives—

"(a) Notice: Persons entitled to notice of an agency hearing shall be timely informed of (1) the time, place, and nature thereof; (2) the legal authority and jurisdiction under which the hearing is to be held; and (3) the matters of fact and law asserted. In instances in which private persons are the moving parties, other parties to the proceeding shall give prompt notice of issues controverted in fact or law; and in other instances agencies may by rule require responsive pleading. In fixing the times and places for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives.

"(b) Procedure: The agency shall afford all interested parties opportunity for (1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment where time, the nature of the proceeding, and the public interest permit, and (2) to the extent that the parties are unable so to determine any controversy by consent, hearing, and decision upon notice and in conformity with sections 7 and 8.

"(c) Separation of functions: The same officers who preside at the reception of evidence pursuant to section 7 shall make the recommended decision or initial decision